# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 09-0049

ALAN J. VOGAN, APPELLANT,

v.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided November 15, 2010)

*Theodore C. Jarvi*, of Tempe, Arizona, was on the brief for the appellant.

*Will A. Gunn*, General Counsel; *R. Randall Campbell*, Assistant General Counsel; *Kenneth A Walsh*, Deputy Assistant General Counsel; and *Jessica M. Schwartz*, Appellate Attorney, all of Washington, D.C., were on the brief for the appellee.

Before HAGEL, MOORMAN, and DAVIS, *Judges*.

DAVIS, *Judge*: U.S. Marine Corps veteran Alan J. Vogan appeals through counsel from a September 23, 2008, Board of Veterans' Appeals (Board) decision that denied an increased rating for postoperative residuals of gynecomastia[1] in both breasts. For the following reasons, the Court will affirm the Board's September 2008 decision.

The appellant had active service from December 1998 to September 2001. Possibly as a result of losing a large amount of weight in order to enlist in the Marine Corps, he experienced gynecomastia in service. Therefore, in 1999, he underwent a bilateral mastectomy and two more subsequent surgeries to perform cosmetic repairs on the scars remaining from the original surgery.

---

[1]"Gynecomastia" is "[e]xcessive growth of the male mammary glands; transitory enlargement of the male breast developing during rehabilitation and recovery from a state of malnutrition or starvation." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 824 (31st ed. 2007).

In a January 2003 rating decision he received service connection for his scars, each rated as 10% disabling, effective the date of his separation from service. These ratings were reduced to 0% for a time, but a 2006 Board decision found the reduction to be in error and restored the 10% ratings. In the decision here on appeal, the Board denied disability ratings in excess of 10%. The Board's analysis was based solely on the diagnostic codes (DCs) for scars.

The appellant presents three arguments for consideration by the Court. He argues first that both the regional office (RO) and the Board approached his disability rating with "tunnel vision" focused on scars, ignoring other DCs that potentially offered higher ratings in view of all of his symptoms. He further argues that he presented new evidence after a previous remand, which the Board considered without remanding to the regional office (RO), thereby depriving him of his statutory right to one review on appeal to the Secretary. *See* 38 U.S.C. § 7104(a); *Disabled Am. Veterans v. Sec'y of Veterans Affairs*, 327 F.3d 1339 (Fed. Cir. 2003). Finally, the appellant argues that the Board's statement of reasons or bases was inadequate for failure to consider evidence favorable to his claim.

## I. ANALYSIS

The Board's selection of the applicable diagnostic code may be set aside "only if such selection is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc) (quoting 38 U.S.C. § 7261(a)(3)(A)). A decision of the Board must include a written statement of the reasons or bases for the findings and conclusions on all material issues of fact and law presented on the record. *See* 38 U.S.C. § 7104(d)(1). The statement must identify the findings that the Board deems crucial to its decision, account for the evidence it finds persuasive or unpersuasive, and be adequate to allow the claimant to understand the precise basis for the decision and facilitate review in this Court. *Davis v. Principi*, 17 Vet.App. 54, 57 (2003); *Allday v. Brown*, 7 Vet.App. 517, 527 (1995).

### A. Selection of Appropriate Diagnostic Code

The appellant has consistently argued that the residuals of his bilateral mastectomy include a wider range of symptoms than is addressed by the application of the DCs for scars. He further argues that the examination requests from the RO inappropriately limited the scope of the

examinations by focusing solely on the DCs for scars. He points to lay and medical evidence of disfigurement, adhesions, hypopigmentation, discharge, pain, and tenderness associated with the bilateral breast surgeries. The appellant does not suggest specific DCs that the Board should have considered in connection with these symptoms. Instead, he submits an appendix listing every DC that mentions "adhesions," including adhesions of the intestine and uterus, as well as DCs that have some connection to the breasts. With one exception, discussed below, none of the DCs listed in the appellant's appendix have any apparent application to rating the residuals of surgery for gynecomastia.[2]

VA may undertake rating by analogy where the disability in question is analogous in terms of the functions affected, the anatomical localization, and the symptomatologies of the ailments. *See Lendenman v. Principi*, 3 Vet.App. 349, 351 (1992); 38 C.F.R. § 4.20 (2010). In this case, however, the appellant has not set forth any argument or explanation of how any other DC would apply to the residuals of his surgery beyond scars. His implicit suggestion that there *ought* to be a DC that would apply to his symptoms falls under the heading of "conjectural analogies." *See* 38 C.F.R. § 4.20 ("Conjectural analogies will be avoided.").

The appellant does reference one DC that requires further discussion. This DC pertains to "breast, surgery of." *See* 38 C.F.R. § 4.116, DC 7626 (2010). The appellant identified this DC "as a likely code for application if examiners were allowed to consider the symptoms associated with it." Appellant's Reply Brief (Br.) at 1. Although the provisions of this DC are primarily directed to surgical procedures undertaken because of breast cancer, they appear to also have some applicability to the appellant's surgical procedure. In fact, as discussed below, under this DC, a noncompensable rating is warranted for criteria that are arguably met in this case based on the undisputed facts. "The Secretary recognizes that the Board, arguably, should have addressed this DC in relation to Appellant's claim." Secretary's Br. at 13. The Court concludes that the Board erred in not considering DC 7626 in its discussion, and therefore the Board's statement of reasons or bases for denying a disability rating higher than 10% was inadequate. *See Schrafath v. Derwinski*, 1 Vet.App.

---

[2]The DCs mentioning adhesions focus on interference either with the digestive process, the heart, or the female reproductive system; there is no factual basis in this case for applying any of these rating codes. The only DC that provides a potentially higher disability rating for scars does so on the basis of limitation of motion and require that the scars have more surface area than the appellant's scars.

589, 593 (1991) (decisions of the Board shall be based on all applicable provisions of law and regulation).

Ordinarily, the Court's inquiry would end here, with directions for the Board to consider DC 7626 on remand, as this Court has made clear that "VA and the [Board] possess specialized expertise in identifying and assessing the medical nature of a claimed condition." *Butts v. Brown*, 5 Vet.App. 532, 539 (1993) (en banc). However, as discussed below, in this case, the facts are so clear when examined in light of the specific and limited criteria of the DC for "breast, surgery of," that the Court concludes that a remand is not required. *See Valiao v. Principi*, 17 Vet.App. 229, 232 (2003) (holding that "[w]here the facts averred by a claimant cannot conceivably result in any disposition of the appeal other than affirmance of the Board decision, the case should not be remanded for development that could not possibly change the outcome of the decision").

## B. Prejudicial Error Analysis

The Court must proceed to determine whether this error prejudiced the appellant. *See* 38 U.S.C. § 7261(b)(2) (stating that the Court shall take due account of the rule of prejudicial error); *Newhouse v. Nicholson*, 497 F.3d 1298, 1301 (Fed. Cir. 2007)*; Conway v. Principi*, 353 F.3d 1369, 1374-75 (Fed. Cir. 2004). At the outset, there is a question as to the permissible scope of review in conducting a harmless error analysis. The Secretary argues that the Court may "go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing 'the record of proceedings before the Secretary and the Board.'" *Mlechick v. Mansfield*, 503 F.3d 1340, 1345 (Fed. Cir. 2007) (quoting *Newhouse*, 497 F.3d at 1302). The appellant counters that these cited cases allow the Court such latitude only in the context of considering errors in complying with the notice requirements of the Veterans Claims Assistance Act of 2000 (VCAA), Pub. L. No. 106-475, § 3(a), 114 Stat. 2096 (codified in part at 38 U.S.C. § 5103(a)).

### 1. The Law of Prejudicial Error

The appellant's position derives from a doctrine set forth by the U.S. Supreme Court concerning the basis of review of agency decisions:

> [In a previous ruling in the case], we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, *in dealing with a determination or judgment* which an administrative agency alone is authorized to make, must judge the propriety of *such action* solely *by the grounds* invoked by the agency. If *those grounds are inadequate or improper*, the court is powerless to

4

affirm the administrative action by substituting what it considers to be a more adequate or proper basis.  To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Sec. & Exchange Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) (emphasis added); *but see Newhouse*, 497 F.3d at 1301 ("the *Chenery* doctrine is not implicated when the new ground of affirmance 'is not one that calls for "a determination or judgment which an administrative agency alone is authorized to make."') (quoting *Fleshman v. West*, 138 F.3d 1429, 1433 (Fed. Cir. 1998)).

In a previous opinion, the Supreme Court overturned an order of the Commission concerning management ownership of preferred stock during a reorganization of a public utility holding company.  The Commission stated that it was merely applying the broad equitable principles of established common law.  The Supreme Court overturned the Commission's order, finding that the case precedent cited by the Commission did not forbid what the management of the holding company proposed to do.  Rejecting arguments that the order should be upheld as otherwise within the powers of the Commission, the holding of the case was that "an administrative order cannot be upheld unless *the grounds* upon which the agency acted in exercising its powers were those upon which its action can be sustained." *Sec. & Exchange Comm'n v. Chenery Corp.*, 318 U.S. 80, 196 (1943) (emphasis added).  On remand, the Commission proffered a new order, premised on its expertise and experience; the Supreme Court upheld the order on these grounds.  *See Chenery Corp.*, 332 U.S. at 209.  These cases stand for the proposition that the correctness of an action of an agency must be judged only on the grounds advanced by the agency.

The U.S. Court of Appeals for the Federal Circuit (Federal Circuit) has applied this doctrine in veterans benefits cases.  *See Mayfield v. Nicholson*, 444 F.3d 1328, 1334 (Fed. Cir. 2006) (holding that this Court's decision sustaining Board determination of sufficient VCAA notice "violate[d] the longstanding principle of law that a court reviewing an agency decision generally may not sustain the agency's ruling *on a ground* different from that invoked by the agency") (emphasis added).

In conducting a prejudicial error analysis, however, the Court is not reviewing a Board determination to assess whether it should be sustained on the grounds advanced by the Board.  The Court has already determined that an error has been made.  Rather, the Court is applying a statutory mandate to consider whether an error "affects a substantial right so as to injure an interest that the statutory or regulatory provision involved was designed to protect such that the error affects 'the

5

essential fairness of the [adjudication].'" *Mayfield v. Nicholson*, 19 Vet.App. 103, 116 (2005) (quoting *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 553-54 (1984)), *rev'd in part by Mayfield v. Nicholson*, 444 F.3d 1328 (Fed. Cir. 2006).[3]  Additionally, the Court in *Mayfield* stated that "a demonstration by one party that an error did not affect the outcome of a case would establish that there was or could be no prejudice."  *Id.* at 120.  It is important to note that the foregoing principles of prejudicial error analysis were all set forth in the 2005 *Mayfield* decision before this Court ever took up the application of these principles in the context of a VCAA notice error.

"[T]he direction to us in [38 U.S.C. §] 7261(b)(2) to 'take due account' of the rule [of prejudicial error] leaves us with considerable latitude as to how to 'take due account.'" *Mayfield*, 19 Vet.App. at 114 (quoting section 7261(b)(2)).  The wording of the statute itself places no limitations on the scope of the Court's inquiry regarding prejudicial error.  The U.S. Supreme Court has stated that "the statute, in stating that [this Court] must 'take due account of the rule of prejudicial error,' requires [this Court] to apply the same kind of 'harmless error' rule that courts ordinarily apply in civil cases."  *Shinseki v. Sanders*, 129 S. Ct. 1696, 1704 (2009) (quoting 38 U.S.C. § 7261(b)(2)).

The Federal Circuit recognized that the statutory obligation to take due account of the rule of prejudicial error "permits the Veterans Court to go outside of the facts as found by the Board to determine whether an error was prejudicial by reviewing 'the record of the proceedings before the Secretary and the Board.'" *Mlechick,* 503 F.3d at 1345 (quoting *Newhouse*, 497 F.3d at 1302).  Furthermore, the Federal Circuit stated that "the principles announced by the Supreme Court in [*Chenery*] are not violated when the Veterans Court makes a determination regarding prejudicial error in the first instance *solely* because Congress has specifically required that court to do so by statute."  *Id.*  These cases recognize that Congress removed consideration of the administrative record in a prejudicial error analysis from the domain of matters that are committed exclusively to the administrative agency.  *See Newhouse*, 497 F.3d at 1301 ("the Veterans Court was required to

---

[3]This Court's decision in *Mayfield* was overruled by the Federal Circuit based on *Chenery* to the extent that this Court relied on documents not relied on by the Board in affirming the Board's finding that VA had satisfied its duty to notify.  *Mayfield*, 444 F.3d at 1334.  The Federal Circuit's decision in *Mayfield*, however, did not disturb this Court's discussion of the definition of "prejudicial error."

examine whether any errors by VA were prejudicial and [] it must do so based on the administrative record.").

The reason behind these holdings is obvious. The Board cannot predict every instance in which it might be found to have committed error. If it could, presumably, it would never err. Therefore, the Board cannot be expected to make specific factual findings that might facilitate a prejudicial error analysis. If the Court's review were restricted to findings made by the Board, the usefulness of Congress's direction that we examine an error for prejudice would be marginalized as a tool for avoidance of remands that entail no realistic prospect of an outcome more favorable to a veteran. Indeed, the Court has previously recognized that it is the Court's responsibility to apply the rule of prejudicial error, not the Board's. *See Medrano v. Nicholson*, 21 Vet.App. 165, 171 (2007) ("Deferring to any Board determinations in the context of prejudicial error would be tantamount to ceding the authority that Congress has vested in this Court; reassignment of the Court's statutory obligation is something we are not inclined, nor authorized, to do."). That all the cases cited above are VCAA notice cases is a distinction without a difference. The underlying imperative of all of these cases is that prejudice should be analyzed from the standpoint of the interest protected by the statutory or regulatory provision involved, to determine whether an error affected the essential fairness of the adjudication. This Court and the Federal Circuit simply applied that methodology to the statute and implementing regulations having to do with VCAA notice, as it would apply them to any other statutory and regulatory provisions.

Given the statutory duty to consider prejudicial error in all cases, and finding no reasoning in *Mlechick* or *Newhouse* that is unique to the notice-error context, the Court is not persuaded by the appellant's argument. The Court therefore holds that in assessing the prejudicial effect of any error of law or fact, the Court is not confined to the findings of the Board but may examine the entire record before the Agency, which includes the record of proceedings. *See* U.S. VET. APP. R. 10,

7

28.1.[4] The Court will therefore proceed to examine the question of prejudicial error in this case employing the full scope of the record in its consideration.

## 2. *Application of Law to this Case*

The purpose of the rating schedule is to evaluate "disability resulting from *all types* of diseases and injuries encountered as a result of or incident to military service." 38 C.F.R. § 4.1 (2010) (emphasis added). "[I]t is the obligation of VA . . . to render a decision which grants every benefit that can be supported in law . . . ." 38 C.F.R. § 3.103 (2010). Thus, the appellant will have established prejudice if he shows that the Board failed to consider any DC under which he potentially may be entitled to additional benefits. The Court will examine the potential prejudice resulting from the Board's failure to consider DC 7626 in that light.

DC 7626 provides for progressively higher disability ratings for residuals of breast surgery according to whether the claimant has undergone a "wide local excision," a "simple mastectomy," a "modified radical mastectomy, " or a "radical mastectomy." 38 C.F.R. § 4.116, DC 7626 (2010). A radical or a modified radical mastectomy involves the removal of lymph nodes in addition to removal of breast tissue. *Id.* at Notes (1) and (2). The Secretary correctly asserts there is no evidence of record that the appellant's mastectomy included removal of lymph nodes. Thus, the ratings for radical mastectomy and modified radical mastectomy are inapplicable. A simple mastectomy involves the removal of all breast tissue, including the nipples, but leaving the lymph nodes and pectoral muscles intact. *Id.* at Note (3). The Secretary correctly notes that the evidence of record excludes the possibility that the appellant underwent a simple mastectomy. *See* Record (R.) at 259 ("He also reports having increased sensitivity of the nipples.").

It is clear, however, that the appellant has undergone a "wide local excision," which the DC defines as "removal of a portion of the breast tissue." DC 7626 at Note (4). He would be entitled to a compensatory rating under DC 7626 only if the wide local excision produced "significant alteration of size or form" of one breast (30%) or both breasts (50%). 38 C.F.R. § 4.116, DC 7626.

---

[4]Although the Court may, in its discretion, direct the filing of additional record material, its review will typically be confined to the record of proceedings (ROP). *See* U.S. VET. APP. R. 28.1. Therefore, the party with the burden of proof as to prejudice, typically the appellant, *see Shinseki*,129 S. Ct. at 1705-06, should take care to make sure that any portions of the record pertaining to a showing of prejudice, or lack thereof, are cited in the briefing, thereby assuring that they will be included in the ROP.

While the surgery for gynecomastia was specifically undertaken to reduce abnormally enlarged male breasts, such a reduction does not constitute a compensable injury under the DC. Rather, the very purpose of the surgery, to which the appellant agreed, was to return the appellant's breasts to the size and form that is normal for males. *Cf. Nielson v. Shinseki*, 23 Vet.App. 56, 61 (2009) (finding that the anticipated and desired outcome of the in-service removal of teeth as a result of periodontal disease cannot constitute a compensable injury).

The appellant complains of "disfigurement," with some supporting citations to medical evidence of record.[5] It is not at all clear what the medical examiners, one of whom was a specialist in internal medicine, and another an M.D. performing a psychiatric examination, may have meant with references to "disfiguring scars." Another medical examiner, while noting that "the information is obtained from the veteran," lists "tissue removed from chest/deformed due to surgery" in the medical history section of the report. R. at 936-37. Later, upon examination, the report reads as follows: "he has two scars under each breast, about 4 cm each, white in color, slightly depressed." R. at 938. The meaning of the word "disfigure" is: "To mar or spoil the appearance or shape of." WEBSTER'S II NEW COLLEGE DICTIONARY 326 (3d ed. 2001). The Court notes that any visible scar mars the appearance of the area on which it exists.

In any view of the matter, the Secretary is correct that these medical reports furnish no evidence that the appellant's 4 cm. scars altered the size or form of the appellant's male breasts such that they are abnormal in any way. One examiner noted that "[t]here is no significant breast asymmetry, but there is mild skin retraction of the right upper breast, due to surgery." R. at 741. In another examination report, the appellant was said to have "mild underlying tissue loss of the outer superior quadrant of the right breast and the inner superior quadrant of the left breast." R. at 262. This tissue loss is precisely the goal of the original surgery. Thus, there is no evidence on which the Board could find "significant alteration of the size or form" that might furnish a basis for a compensable disability rating under DC 7626.

---

[5]He asserts that "[d]isfigurement is a significant element of skin ratings under [DC] 7800." Appellant's Br. at 16. This DC, however, pertains to facial, head, or neck disfigurement and does not constitute a general DC for scars anywhere on the body. We nevertheless consider the appellant's cited medical evidence in our discussion of DC 7626.

Therefore, the appellant's surgical residuals would be classified as "wide local excision *without* significant alteration of size or form." DC 7626 (emphasis added). DC 7626 provides a *noncompensable* rating for such classification. The appellant, however, is receiving a 10% disability rating for each of his scars as residuals of gynecomastia. Accordingly, he would obtain no additional disability rating beyond that which he already has under the rating for scars.

The remaining symptoms of which the appellant complains–adhesions, hypopigmentation, discharge, pain, and tenderness–are simply not pertinent to DC 7626 and would not enter into an analysis regarding the criteria for DC 7626. Thus, even if the Board had applied DC 7626, there is no basis on which the appellant would have been entitled to a compensable disability rating for breast surgery. The Court therefore concludes that neither the appellant nor the record demonstrates prejudice from the Board's failure to apply DC 7626. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (Court will not strictly adhere to reasons-and-bases requirement when such adherence "would result in . . . unnecessarily imposing additional burdens on [the Board] with no benefit flowing to the veteran").

As noted above, the appellant has suggested no other DC under which his additional symptoms might lead to an increased rating, either directly or by analogy. He states that he made a conscious choice to refrain from identifying any additional DCs because the VA examinations did not furnish evidence pertaining to other DCs. Appellant's Reply Br. at 1. As shown in the foregoing discussion, however, the evidence of record is sufficient to evaluate the potential application of DC 7626. Moreover, the Board stated that both the 2004 and 2005 VA examinations noted "no evidence of adherence, disfigurement, ulceration, instability, keloid, . . . abnormal texture, or limitation of motion." R. at 27, 28. The Court's review confirms the Board's account of the evidence. The record, therefore, does not sustain the appellant's contention that the examiners' focus on evidence pertaining to scars prevented him from evaluating the potential applicability of other DCs.

In sum, the Board's error in failing to discuss potentially relevant DC 7626 was not prejudicial because the highest rating to which the appellant could possibly be entitled under DC 7626 is a noncompensable rating, which is lower than the rating he is receiving. In addition, the appellant has not shown that any other DC is potentially relevant based on the facts of this case. Accordingly, the Court concludes that the Board's selection of the DC for scars was not "arbitrary,

10

capricious, and abuse of discretion, or otherwise not in accordance with law." 38 U.S.C. § 7261(a)(3)(A); *see Butts v. Brown, supra* (holding that selection of a DC is a question of application of law to facts and is subject to Court review under the arbitrary-and-capricious standard).

## C. Other Arguments

This case was previously before the Court, but the appeal was terminated on the basis of a joint motion for remand (JMR). Although the appellant does not specifically cite noncompliance with the JMR as an error, he notes that the JMR stipulated that the prior Board decision was to be remanded for "development and readjudication consistent with the contents" of the motion. R. at 113-14. He complains that no additional development was conducted with respect to the gynecomastia claims before they were readjudicated. Appellant's Br. at 12. A review of the JMR reveals that the reason for the remand was that the Board's explanation was "not clear as to the disposition of Appellant's spinal and bi-lateral foot disabilities," particularly as to whether the appellant received notice of his appellate rights with respect to those issues. R. at 113. The JMR acknowledged no deficiencies in the Board's handling of the gynecomastia claims and mandated no specific actions to be taken on remand with respect to those claims. The Court also notes in this regard that the appellant was represented by an attorney who negotiated the JMR.

Our law is clear: Had the appellant's lawyer bargained for specific development on remand, the development should have been specified to a degree sufficient for the Secretary to comply with the remand. *See Forcier v. Nicholson*, 19 Vet.App. 414, 426 (2006) (holding that before the Court can conclude that the Board erred by failing to enforce a joint motion, it must determine that the joint motion enumerated clear and specific instructions to the Board). In a joint motion, it is the responsibility of both represented parties to state clearly the purpose of the remand and to set forth detailed directions to describe the action the Board should take upon remand. *See* U.S. VET.APP. R. 27(a)(2) & (3). Thus, any complaint made now regarding noncompliance with the JMR falls on deaf ears here as the general prescription "for development and reajudication" leaves the extent of development conducted on remand within the discretion of the Secretary, the execution of that discretion being limited only by the law.

Similarly, the appellant's other arguments have no merit. The Court's review of the appellant's letter to VA after the last Supplemental Statement of the Case reveals it to be only argument about evidence that was previously before the Board. In particular, there was evidence of adhesions before the Board prior to the submission of the document containing the appellant's argument. *See* R. at 836. Therefore, the Board had no obligation to remand to the RO for initial consideration of new evidence. Finally, the Court regards the Board's explanation of its rating decision to be adequate, with the exception of its neglect of DC 7626, which the Court concludes is harmless error.

## II. CONCLUSION

On consideration of the foregoing, the Court AFFIRMS the September 23, 2008, Board decision.