Citation Nr: 1456946 
Decision Date: 12/31/14 Archive Date: 01/09/15

DOCKET NO. 09-22 949 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Boston, Massachusetts


THE ISSUES

1. Entitlement to service connection for bilateral hearing loss.
 
2. Entitlement to service connection for erectile dysfunction (ED).

3. Entitlement to service connection for a foot disorder, claimed as fallen arches.

4. Entitlement to service connection for drop foot, to include a nerve disorder affecting the lower extremities.


REPRESENTATION

Veteran represented by: National Association for Black Veterans, Inc.


ATTORNEY FOR THE BOARD

A. D. Jackson, Counsel

INTRODUCTION

The Veteran had active service from August 1962 to July 1966.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2008 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Boston, Massachusetts. 

The Board remanded these claims in May 2014. They have been returned for review by the Board. 


FINDINGS OF FACT

1. Bilateral hearing loss is causally related to military service. 

2. A foot disorder, including pes planus, hammer toes, and hallux valgus, is causally related to military service.

3. Erectile dysfunction was caused by service-connected hypertension.

4. Right peroneal neuropathy did not have its onset during active service and it not related to any incident of service.


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for bilateral hearing loss have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. § 3.303 (2014).

2. The criteria for entitlement to service connection for ED as secondary to hypertension have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. § 3.310 (2014).

3. The criteria for entitlement to service connection for a foot disorder, to include pes planus, hallux valgus, and hammertoes, have been met. 38 U.S.C.A. §§ 1110, 5107 (West 2002); 38 C.F.R. § 3.303 (2014).

4. Right peroneal neuropathy was not incurred in or aggravated by active service and may not be presumed to have been incurred or aggravated in service. 38 U.S.C.A. §§ 1110, 1112, 5107 (West 2002); 38 C.F.R §§ 3.303, 3.307, 3.309 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duty to Assist and Notify

As the claims for service connection for hearing loss, erectile dysfunction, and foot disorders are granted, the duty to notify and assist is not applicable. With respect to the claim for service connection for foot drop, VA's duties to notify and assist under the Veterans Claims Assistance Act of 2000 (VCAA) have been satisfied. See 38 U.S.C.A §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2014). 

A September 2007 letter provided all notice required under the VCAA. It notified the Veteran of the elements of service connection and how VA determines the effective date for the award of an increased rating, the types of evidence that could support the claims, and the allocation of responsibilities between the Veteran and VA for obtaining relevant records and other evidence on his behalf. See Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 484 (2006); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); 38 C.F.R. § 3.159(b). The letter was followed by adequate time for the Veteran to submit information and evidence before the initial decision in this case. See Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2007). 

Concerning the duty to assist, the Veteran's service treatment records, VA treatment records, and private treatment records identified by him have been associated with the claims file. See 38 U.S.C.A § 5103A; 38 C.F.R. § 3.159(c). He has not identified any other records or evidence he wished to submit or have VA obtain. An adequate VA examination was also performed in June 2009, with a medical opinion. See 38 C.F.R. §§ 3.159(c)(4), 3.326(a); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) (holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate). The examination report and opinion include a review of the Veteran's medical history and the clinical findings made on examination, and the opinion provided is supported by an explanation that is consistent with the evidence of record, can be weighed against contrary opinions, and is sufficient to make a fully informed decision on this claim. See D'Aries v. Peake, 22 Vet. App. 97, 104 (2008) (holding that an examination is adequate when it is based on consideration of the claimant's medical history and describes the disability in sufficient detail so that the Board's evaluation of the disability will be a fully informed one); Stefl v. Nicholson, 21 Vet. App. 120, 124-25 (2007) (holding that an adequate examination must support its conclusion with an analysis that can be weighed against contrary opinions); see also Monzingo v Shinseki, 26 Vet. App. 97, 107 (2012) (holding that "examination reports are adequate when, as a whole, they sufficiently inform the Board of a medical expert's judgment on a medical question and the essential rationale for that opinion even when the rationale does not explicitly 'lay out the examiner's journey from the facts to a conclusion'") (citing Acevedo v. Shinseki, 25 Vet. App. 286, 293 (2012) (noting that the law imposes no reasons-or-bases requirement on examiners)). Accordingly, the examination and opinion are adequate for the purposes of this decision. 

In light of the above, the Veteran has had a meaningful opportunity to participate effectively in the processing of this claim, and no prejudicial error has been committed in discharging VA's duties to notify and assist. See Shinseki v. Sanders, 556 U.S. 396, 407, 410 (2009); Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004); Arneson v. Shinseki, 24 Vet. App. 379, 389 (2011); Vogan v. Shinseki, 24 Vet. App. 159, 163 (2010). 



II. Service Connection

Service connection means that a Veteran has a current disability resulting from disease or injury incurred in or aggravated by his active military service in the line of duty. 38 U.S.C.A. §§ 1110, 1131; 38 C.F.R. § 3.303(a). Service connection may be granted for any disease diagnosed after discharge when the evidence, including that pertinent to service, shows that it was incurred in service. 38 C.F.R. § 3.303(d). Entitlement to service connection is established when the following elements are satisfied: (1) the existence of a current disability; 
(2) in-service incurrence or aggravation of a relevant disease or an injury; and (3) a causal relationship or "nexus" between the current disability and the disease or injury incurred or aggravated during service. Shedden v. Principi, 381 F.3d 1163, 1166-67 (Fed. Cir. 2004).

If chronicity (permanency) of disease or injury in service is not established or legitimately questionable, then a showing of continuity of symptomatology following service alternatively may establish the required correlation between the disability now being claimed and service, but only if the disability being claimed is one of the conditions specifically identified as "chronic" in 38 C.F.R. § 3.309(a).
See Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2012).

These chronic diseases, per se, also may be presumed to have been incurred in service if manifested to a compensable degree (meaning to at least 10-percent disabling) within the initial year after service. This presumption, however, is rebuttable by affirmative evidence to the contrary. 38 U.S.C.A. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

Service connection may also be established on a secondary basis for a disability which is proximately due to, or the result of, a service connected disease or injury. 38 C.F.R. § 3.310(a). The Court has construed this provision as entailing "any additional impairment of earning capacity resulting from an already service connected condition, regardless of whether or not the additional impairment is itself a separate disease or injury caused by the service connected condition." Allen v. Brown, 7 Vet. App. 439, 448 (1995). In order to establish entitlement to service connection on a secondary basis, the evidence must show (1) that a current disability exists and (2) that the current disability was either (a) caused by or (b) aggravated by a service-connected disability. Id. 


Bilateral Hearing Loss

In regard to element (1), current disability, post-service VA examination indicates a diagnosis of bilateral hearing loss. 

In regard to element (2), in-service incurrence, the Veteran contends he has current hearing loss due to loud noise exposure specifically in proximity to airplanes as well as flight lines. He is capable of describing and reporting his noise exposure in service. Plus his DD-214 (Armed Forces of the United States Report of Transfer or Discharge) shows that his military occupational specialty (MOS) was airplane repairman. Thus, noise exposure is deemed consistent with the circumstances of his service. 38 U.S.C.A. § 1154(a).

In regard to element (3), causal relationship, a VA examiner in June 2008 noted that the Veteran's hearing loss has been gradual over the years and is not clearly related to acoustic trauma because hearing was within normal limits on discharge. This VA examiner did not rule out the fact that his in-service exposure may have, in part, been a contributing factor in the development of hearing loss. Although the record also contains a subsequent June 2014 VA medical opinion which is against the claim, the Board finds that the evidence regarding the third element, (causal relationship), is in relative equipoise. Resolving reasonable doubt in the Veteran's favor, the Board finds that the third element is satisfied. 38 C.F.R. § 3.102.

As all three elements have been satisfied, the Board finds that service connection for bilateral hearing loss is warranted.



Erectile Dysfunction

The Veteran seeks service connection for erectile dysfunction to include as secondary to his now service-connected hypertension. In August 2014, the RO granted service connection for hypertension. 

In December 2012, the Veteran submitted an article printed from the Internet by the Mayo Clinic which reflects that erectile dysfunction is commonly a result of various disabilities to include diabetes mellitus, heart disease, and hypertension. 

In light of the Veteran's medical history, a VA examination was conducted in June 2014 in which a physician was asked to comment on the etiology of the Veteran's ED. The VA examiner stated: 

There is no evidence that his hypertension has been a factor in his erectile dysfunction. He is not taking any antihypertensives linked to erectile dysfunction. The erectile dysfunction is more likely caused by aging and diabetes which are known causes of erectile dysfunction. 

In this case, the Board does not find the June 2014 opinion adequate. The examiner failed to address the Internet article. While he found that diabetes and aging were the more likely causes he did provide adequate rationale to rebut the internet article which also found diabetes as well as hypertension as possible causes of ED. It is not clear as to why he chose diabetes mellitus and not hypertension as a possible cause. The Board acknowledges that his hypertension does not have to be the sole contributor to the development of ED. As such, the Board finds that the evidence is in relative equipoise. In light of the medical evidence (Internet article) and resolving reasonable doubt in the Veteran's favor, the Board finds that service connection for ED secondary to hypertension is warranted. 38 C.F.R. § 3.102.



Bilateral Foot Disability

The Veteran contends that he has various foot disorders related to military service. He states that he had poorly fitting footwear in service and that he had corns and calluses that he self-treated. He later had surgery for bunions of both feet and hammer toes (5th toes bilaterally). He maintains that he did not have a foot condition before entering the service. 

Reviewing the Veteran's medical history, on the entrance examination of August 1962, the Veteran checks yes to the question of whether he had or ever had "foot trouble". There was no explanation given. The physical examination of the feet was marked normal. There is no indication of a foot problem shown during military service. On the report of the June 1966 examination conducted prior to separation "foot trouble" is again checked yes without explanation. The physical examination of the feet was considered normal.

VA examinations were conducted in June and August 2014. The diagnoses included pes planus, hammer toes, and hallux valgus. The Veteran reported his history, noting his in-service foot problems as well as his continuing manifestations. He indicated that at some point in the 1980s or 1990s, foot surgery was performed. After physical examination and review of the medical records, the August 2014 VA examiner concluded that the notation regarding foot troubles on entry into service did not constitute "clear and unmistakable" evidence of a pre-existing disability. Concerning whether flat feet or any other intrinsic foot disability is related to military service, the examiner added that the available medical records indicate a diagnosis of flat feet many years later. He found that there was no evidence to link the Veteran's military service to a disability that was diagnosed many years later.

Here, although the Veteran gave a history of foot trouble upon his entry onto active duty, clinical evaluation of the feet was normal and no foot disorder was diagnosed or noted. Accordingly, he is presumed to be in sound condition upon his entry onto active duty. 38 U.S.C.A. § 1111. 

The Veteran has reported that his foot problems continued subsequent to military service and he in fact, underwent foot surgery in the 1980s or 1990s. In this regard, the Veteran served four years of military service and withstood the rigors of military training. Furthermore, the record clearly shows that his bilateral foot disorder was of such severity that surgery was required. Still further, the Veteran has reported continuous bilateral foot problems and self-treatment since service discharge. He is competent as to his observations of flat feet in particular. Accordingly, in light of the Veteran's medical history, as well as his statements, the Board finds that service connection for pes planus, bilateral hallux valgus. and hammer toes is warranted. 38 C.F.R. § 3.102.


Foot Drop

The Veteran maintains that service connection is warranted for a disability claimed as foot drop. In considering the elements required for service connection outlined in Shedden, the Veteran has the required current diagnosis to account for his complaints of foot drop. More specifically, a July 2007 private electromyography (EMG) study revealed right peroneal neuropathy. The Board realizes that the August 2014 VA examiner indicated that his neuropathy had resolved. Regardless, where disability was shown at time of filing, but later resolved, a "current disability" has been shown and the claim remains viable. McClain v. Nicholson, 21 Vet. App. 319 (2007). A disability need only to be demonstrated at any time since the claim has been filed. Gilpin v. West, 155 F.3d 1353 (Fed.Cir. 1998). 

However, the preponderance of the evidence is against a finding of the second and third elements of Shedden. In regard to evidence of in-service incurrence, the STRs do not show complaints, findings, or diagnoses regarding any neurological disability of the lower extremities during service. Nor were any such manifestations present within one year of the Veteran's discharge from service. See Struck v. Brown, 9 Vet. App. 145 (1996) (discussing how contemporaneous medical findings may be given more probative weight than contrary evidence offered years later, long after the fact). Furthermore, the Veteran has not reported anything in regard to in-service neuropathy involving the lower extremities in either his application for benefits or in written statements to VA. 

There are no records reflecting complaints, diagnosis, or findings related to neuropathy of the lower extremities until approximately 2007, about 31 years after the Veteran's military service ended in 1966. As referred to above, in May 2007, the Veteran complained of numbness and tingling on top of the right foot. The initial diagnosis was questionable right foot drop. As noted an EMG was conducted in July 2007 which revealed right peroneal neuropathy. This is far removed from his service with no suggestion of its initial manifestation until many intervening years following conclusion of his service. The Board may consider the absence of evidence when engaging in a fact-finding role. 

Just as significant, this private neurologist did not relate the Veteran's neuropathy to military service. In reporting the diagnostic impression the neurologist stated that the most likely cause of the neuropathy was a combination of factors including early diabetes, alcohol, and weight. 

In light of his medical history, the VA examiner in August 2014 was asked to comment on the etiology of the claimed foot drop. The examiner stated that there is no evidence in his service records indicating a diagnosis of foot drop or any symptoms suggestive of foot drop or other neurological condition of the feet or legs in the service. Further, there is no evidence to link this to military service many years earlier. He added that review of VA records from 2008 to the present does not indicate any evidence of foot drop or other weakness or neuropathy of the feet. 

Therefore, the preponderance of the evidence is against a finding as to the third element of the Shedden analysis as it pertains to the requirement of a nexus or link between the current disability and an event, injury or disease in service. There also is no other competent and credible opinion in the file refuting the VA examiner's and/or the private neurologist's unfavorable opinions. The Veteran's statements are insufficient to rebut these opinions given the complexity of neurological disorders; he is not competent to comment on such matters. 

For these reasons and bases, the preponderance of the evidence is against the claim for service connection for a disability claimed as "foot drop". Since the preponderance of the evidence is against the claim, the benefit-of-the-doubt rule does not apply, and the claim must be denied. 38 U.S.C.A. § 5107(b); 38 C.F.R. § 3.102.


ORDER

Service connection for bilateral hearing loss is granted.

Service connection for ED is granted.

Service connection for bilateral foot disorders, to include pes planus, bilateral hallux valgus, and hammertoes, is granted.

Service connection for a disability claimed as foot drop, to include a nerve disorder affecting the lower extremities, is denied.


____________________________________________
P.M. DILORENZO
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs