# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-3856

CECIL E. HEMBREE, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued June 10, 2020                                     Decided August 31, 2020)

*Steven M. Spitzer*, with whom Glenn R. Bergmann and Christopher M. Toms, all of Bethesda, Maryland, were on the brief for the appellant.

*Abigail J. Schopick*, with whom *James M. Byrne*, General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Christopher W. Wallace*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before ALLEN, TOTH, and FALVEY, *Judges*.

FALVEY, *Judge*: Army veteran Cecil E. Hembree appeals through counsel a May 7, 2018, Board of Veterans' Appeals decision that denied an effective date earlier than February 24, 2011, for service-connected diabetes mellitus, type II (diabetes), and coronary atherosclerosis disease (CAD).[1]

This appeal, over which the Court has jurisdiction under 38 U.S.C. §§ 7252(a) and 7266(a), was referred to a panel of the Court to address whether the factors laid out in *DeLisio v. Shinseki*, 25 Vet.App 45 (2011), apply to a written request to withdraw an appeal.

---

[1] The decision on appeal also remanded the matters of an increased initial rating greater than 20% for diabetes and whether new and material evidence had been received to reopen a claim for post-traumatic stress disorder. Because a remand is not a final decision, the Court lacks jurisdiction over these claims and we will not address them. *See* 38 U.S.C. § 7252(a) (finding that the Court has "exclusive jurisdiction" to review final Board decisions); *Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (holding that a Board remand "does not represent a final decision over which this Court has jurisdiction").

We hold that they do not. Instead, when an appellant seeks to withdraw an appeal in writing, 38 C.F.R. § 20.204(b) governs whether that withdrawal is effective.[2] Because Mr. Hembree's written withdrawal fully complies with the regulation, we affirm the Board's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Hembree served on active duty from 1969 to 1971. Record (R.) at 1907. In August 2001, he sought service connection for diabetes based on herbicide exposure, specifically Agent Orange, and secondary service connection for "circulatory conditions." R. at 2315. In May 2005, the regional office (RO) denied his claims for diabetes and a heart condition, which it characterized as CAD. R. at 1361-62. Mr. Hembree did not appeal this decision and it became final.

In May 2007, the veteran requested that VA reopen these previously denied claims, again saying that they stemmed from exposure to Agent Orange. R. at 1326-27. In a June 2008 rating decision, the RO declined to reopen his claims because he had failed to submit new and material evidence. R. at 1120-27. In July 2008, Mr. Hembree filed an informal Notice of Disagreement (NOD), R. at 1100; but, in August 2008, the RO rejected this submission as inadequate and directed him to file a formal NOD instead, R. at 1092.

On September 19, 2008, Mr. Hembree responded with three submissions from his veterans service organization (VSO) representative. The first of these was a typed statement with Mr. Hembree's name, file number, and signature, which stated that he requested "to withdraw all pending claims and appeal." R. 1089. The second was a typed letter from the VSO representative, again bearing Mr. Hembree's name and file number, and stating: "[T]he veteran wishes to submit [an] employment questionnaire and withdraw[] all pending claims and appeals." R. at 1090. The third document was the employment questionnaire used for a claim for total disability for individual unemployability (TDIU). R. at 1091.[3]

---

[2] Effective February 19, 2019, VA amended and renumbered 38 C.F.R. § 20.204 to comply with the appeals processing changes mandated by the Veterans Appeals Improvement and Modernization Act of 2017, Pub. L. No. 115-55, 131 Stat. 1105 (Aug. 23, 2017). But the regulatory changes apply only to claims in which VA issues an initial decision after February 19, 2019, unless a "legacy" claimant elects to use the modernized review system. 84 Fed. Reg. at 177. There is no assertion that the new rule should apply here. Thus, we limit our analysis to the 2017 version of the regulation; the law in effect at the time of the Board's May 2018 decision.

[3] We note that Mr. Hembree has been in receipt of a 60% rating for degenerative disc disease of the lumbar spine since September 1997. R. at 1128. This rating alone makes him eligible for TDIU consideration under 38 C.F.R. § 4.16.

On December 10, 2008, Mr. Hembree called VA to check on his TDIU claim. R. at 1081. Then in October 2009, he called again and stated that he was "requesting to discontinue his claim for Agent Orange submitted 12/10/08 due to health reasons" and that "he no longer wishes to pursue benefits at this time." R. at 695. We note that there does not appear to be a December 10, 2008, claim for benefits related to Agent Orange or otherwise. Rather, it was on that date that Mr. Hembree called VA to talk about his TDIU claim. R. at 1081.

In March 2011, Mr. Hembree filed a request to reopen his service-connection claim for diabetes and CAD. R. at 568. VA processed this claim as a "new claim for benefits." R. at 400. In a February 2012 rating decision, the RO granted benefits for both claims, applying the presumption of herbicide exposure applicable to his service in the demilitarized zone (DMZ) in Korea. R. at 402-03. The RO assigned an effective date of February 24, 2011, which stemmed from the date of the liberalizing law that entitled him to presumptive service connection. R. at 402-03.

Mr. Hembree filed an NOD as to the effective date, arguing that he was entitled to an earlier effective date based on the previously filed claims for diabetes and heart disease. R. at 315. In September 2014, the RO issued a Statement of the Case continuing the effective date of February 24, 2011, R. at 104-33; and in October 2014, Mr. Hembree perfected his appeal to the Board, R. at 101-02.

In May 2018, the Board issued the decision on appeal finding that an effective date earlier than February 24, 2011, for diabetes and CAD was not warranted because this date represented the earliest date on which Mr. Hembree could receive benefits under the revised regulation for presumptive service connection based on his service in the Korean DMZ. R. at 8. The Board found that, although he had expressed general disagreement with the June 2008 rating decision, he had withdrawn his appeal of the CAD and diabetes claims in September 2008. R. at 7 And because he had not submitted new and material evidence within one year following the June 2009 rating decision, the decision became final. R. at 7. The Board thus denied an earlier effective date. We are asked to review the Board's finding that the veteran withdrew his appeal.

## II. ANALYSIS

### A. Legal Landscape

We have a well-settled standard for orally withdrawing an appeal. This Court's decision in *DeLisio v. Shinseki* explains that a withdrawal is effective only where it is "explicit, unambiguous,

and done with full understanding of the consequences of such action on the part of the claimant." 25 Vet.App. at 57. This standard has its roots in our decision in *Hanson v. Brown*, where we held that the veteran had validly withdrawn his claim when "there [was] no indication that the veteran was misguided or lacked understanding of the consequences of his actions." 9 Vet.App. 29, 32 (1996). Our review in *Hanson* focused "chiefly [on] a 'Report of Contact' contemporaneously prepared by the social worker assigned to evaluate the appellant for PTSD." *Id*.

We relied on *Hanson* in *DeLisio* to articulate our rule that a withdrawal must be "explicit, unambiguous, and done with full understanding of the consequences of such action on the part of the claimant." 25 Vet.App. at 57, *citing Hanson*, 9 Vet.App. at 32. And we used that standard to find that Mr. DeLisio's oral withdrawal was not valid because, even though the "Board member had identified the issues to be discussed, the transcript reflect[ed] neither an explicit discussion of withdrawal nor any indication that Mr. DeLisio understood that he might be withdrawing claims for benefits for any disabilities not discussed." *DeLisio*, 25 Vet. App. at 58.

As the Federal Circuit recently made clear, when the *DeLisio* standard applies, the Board must address all three prongs of the standard—in other words, we need the Board's findings on all three elements to properly review its decision. *See Acree v. O'Rourke*, 891 F.3d 1009, 1014 (Fed. Cir. 2018). At the same time, the Federal Circuit noted that the *DeLisio* standard deals with the "requirements necessary for an effective oral withdrawal of a claim at a board hearing." *Id*. at 1013 n2. Thus, the Federal Circuit explained that it "express[ed] no view on the criteria that must be satisfied when a veteran submits a written request to withdraw a claim." *Id. citing* 38 C.F.R. § 20.204(b). This brings us to the dispute in Mr. Hembree's appeal.

### B. Written Withdrawal of an Appeal

Mr. Hembree argues that the Board erred in finding that he withdrew his 2008 service-connection claims for diabetes and CAD because it failed to discuss whether his written withdrawal complied with the requirements set forth in *DeLisio* and affirmed in *Acree*. Appellant's Brief (Br.) at 7-8. The Secretary responds that *DeLisio* and *Acree* dealt specifically with oral withdrawals at a hearing, not written withdrawals as is the case here. Secretary's Br. at 6. This is an important distinction.

Our cases have not addressed a written withdrawal submitted by the veteran. *DeLisio* dealt with an oral withdrawal at a hearing. 25 Vet.App. at 58. *Hanson* dealt with a written notation of the veteran's discussion with a social worker. 9 Vet.App. at 32 (holding that a withdrawal was

4

valid because there was "no indication that the veteran was misguided or lacked understanding of the consequences of his actions"). *Compare Warren v. McDonald*, 28 Vet.App. 214, 218-19 (2016) (reversing the Board's finding that a report of a phone conversation was a valid withdrawal of appeal because there was "considerable evidence" that a withdrawal was not intended).

Importantly, as the Federal Circuit reminded us in *Acree*, VA has a regulation that deals with written withdrawals—§ 20.204(b). *See* 891 F.3d at 1012 ("Section 20.204(b)(1) sets out with particularity the requirements for making a written request to withdraw a claim.").

A valid regulation has the force and effect of law. *See Chrysler Corp. v. Brown*, 441 U.S. 281, 295 (1979). Thus, absent a challenge to the validity of this regulation, we are bound to apply it.[4] And because this case deals with a regulation, we begin our analysis with its text. *See Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993). If the regulation is not ambiguous, the "regulation then just means what it means—and the court must give it effect." *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019).

Turning then to the regulation, we see that "[o]nly an appellant, or an appellant's authorized representative, may withdraw an appeal [and that an] appeal may be withdrawn as to any or all issues involved in the appeal." 38 C.F.R. § 20.204(a). To be effective, the "withdrawal[] must be in writing [and] must include the name of the veteran, the name of the claimant or appellant if other than the veteran (e.g., a veteran's survivor, a guardian, or a fiduciary appointed to receive VA benefits on an individual's behalf)." 38 C.F.R. § 20.204(b)(1). The withdrawal must also include "the applicable Department of Veterans Affairs file number, and a statement that the appeal is withdrawn." *Id.* And "[i]f the appeal involves multiple issues, the withdrawal must specify that the appeal is withdrawn in its entirety, or list the issue(s) withdrawn from the appeal." *Id.*

As the Federal Circuit observed, the regulation comprehensively lays out the requirements for making a written withdrawal. *See Acree*, 891 F.3d at 1012. Although we don't shut the door on future arguments about its terms, we see no ambiguity in the text of the regulation that we must resolve in this appeal. And neither Mr. Hembree nor the Secretary raises arguments that cast doubt on the meaning of the regulation. Thus, our role now is to enforce the text of the regulation. *See*

---

[4] Mr. Hembree has not challenged the validity of § 20.204. Admittedly, his counsel pivoted to making a constitutional argument at oral argument, but we have "repeatedly discouraged parties from raising arguments that were not presented in an initial brief to the Court." *Norvell v. Peake*, 22 Vet.App. 194, 201 (2008). Thus, we will not take up this belated argument and we leave for another day questions about the validity of this regulation.

*Kisor,* 139 S. Ct. at 2415. And this means that we may not impose the *DeLisio* standard on a written withdrawal.

Admittedly, the regulation's provisions embody the first two *DeLisio* factors—the withdrawal must be explicit and unambiguous. The regulation specifies that a withdrawal include the veteran's file number and a statement that the appeal is withdrawn. 38 C.F.R. § 20.204(b)(1). And if the appeal involves multiple issues, the regulation also requires specificity about whether the entire appeal or only specific issues are withdrawn. *Id.* These regulatory requirements for a written withdrawal mimic the *DeLisio* requirements that an oral withdrawal be explicit and unambiguous. But, unlike *DeLisio*, the regulation does not leave room for us to read into it a requirement for an affirmative inquiry into whether the withdrawal is done with full understanding.

This is for two reasons. First, because the regulation does not impose such a requirement, as we explained, we may not add it to the regulation. And second, under the regulation, a withdrawal is effective when received and an appellant may renew his or her appeal after withdrawing it. *See* 38 C.F.R. §§ 20.204(b)(3), 20.204(c). If a written withdrawal is to be effective when received, then an adjudicator cannot reasonably be required to wait to give it effect depending on what happens after it is submitted. And the fact that the appellant can renew the appeal after withdrawing it shows us that the regulation contemplates the appellant changing his or her mind or undoing the withdrawal if it is submitted by mistake or if there is a change in circumstances. But forcing an inquiry into the veteran's subjective understanding following the written withdrawal would impermissibly negate these provisions of the regulation, something we may not do. *See Ravin v. Wilkie*, 30 Vet.App. 310, 315 (2018).

This is why the Board should ordinarily confine itself to deciding whether the withdrawal is valid based on examining the written submission to determine whether it complies with the requirements laid out in § 20.204(b). Of course, if the written withdrawal is itself ambiguous—for example, if it fails to adequately specify which claim is being withdrawn—the Board may need to consider other evidence. Moreover, when considering whether the submission is ambiguous, the Board should not lose track of the pro-claimant nature of the VA system. *See Elkins v. Gober*, 229 F.3d 1369, 1376 (Fed. Cir. 2000). But this is not the appropriate case to decide what ambiguity or deviation from § 20.204 negates a withdrawal. It is enough to say that, if the withdrawal includes the name of the appellant and the file number and unambiguously identifies the claims to be

withdrawn, then the written withdrawal will be considered valid and the Board need not look to other evidence to find it so.

Such a reading of § 20.204 gives effect to the regulatory requirements for withdrawing a claim because the Board must ensure that those requirements are met before concluding a claim is withdrawn. At the same time, such a reading gives full effect to the provisions that make withdrawals effective upon receipt and allow a veteran to change his or her mind following a written withdrawal and renew the appeal. Further, the requirements for specificity, found in § 20.204(b), and the ability to renew an appeal under § 20.204(c) act to protect the appellant's interest in the claim, much like the "understanding" requirement of *DeLisio*.

That said, the regulation does not leave room for the kind of subjective inquiry into the veteran's understanding that is required under *DeLisio*. Putting aside that the text of the regulation breaks down if we try to wedge in all three elements, there are practical considerations that limit *DeLisio's* applicability to written withdrawals. As the Federal Circuit noted: "it is unlikely to be unduly burdensome for the hearing officer to determine—either by questioning the representative or by contacting the veteran directly—that the veteran firmly intends to withdraw a claim and understands the consequences of claim withdrawal." *Acree*, 891 F.3d at 1015. Although this makes sense in the hearing context, requiring VA to make an affirmative inquiry when the claimant or a representative submits an otherwise explicit and unambiguous written withdrawal imposes a heavier burden.[5]

We thus hold that *DeLisio* does not apply to written withdrawals of an appeal. Instead, the regulation controls when the veteran or his or her representative submits a written withdrawal of an appeal. When the Board must analyze whether a written withdrawal is effective, its chief questions are whether the written withdrawal falls under § 20.204(b) and, if so, whether it complies with that regulation's requirements. If the answer to both questions is yes, then that is generally the end of the matter. Whether any post-withdrawal information *could* call the propriety of that withdrawal into question is not an issue we need to address today.

## C. Application to Mr. Hembree

With this standard clarified, we turn to Mr. Hembree's appeal. The Board noted that he submitted an NOD in July 2008. R. at 5. But after the RO requested more information, "in [his]

---

[5] Nothing stops the Secretary from clarifying an ambiguous withdrawal, either by phone or in writing. But we decline to impose such a requirement when the withdrawal fully complies with § 20.204.

September 2008 correspondence, the [v]eteran requested to withdraw all pending claims and appeals." R. at 5. The Board thus found that the veteran withdrew his appeal. R. at 7. The question before us is whether it erred.

Like the Board, we focus on the documents that VA received on September 19, 2008—specifically, the statement signed by Mr. Hembree, R. at 1089, and the letter from his VSO, R. at 1090. Because Mr. Hembree had started his appellate process, § 20.204 applies and we consider whether the two documents comply with the requirements set out in 20.204(b)(1).

Both documents, one signed by Mr. Hembree and the other signed by his VSO, contain Mr. Hembree's name and his file number, and both say that all pending claims and appeals are withdrawn. R. at 1089, 1090. This is just as 38 C.F.R. § 20.204(b)(1) requires. Mr. Hembree argues that his September 2008 submission and subsequent conduct call into doubt his intent and understanding of his withdrawal. But when the written document is not ambiguous, the veteran's subsequent conduct does not come into play. And the withdrawal is effective when received. *See* 38 C.F.R. § 20.204(b)(3). Mr. Hembree told VA that he wanted to withdraw "all pending claims and appeals" and that's what happened. R. at 90. And it happened when he submitted these documents. We see no ambiguity in Mr. Hembree's withdrawal. Nor can we find a defect that would make § 20.204 inapplicable.

Even if Mr. Hembree's October 2009 phone call to VA had some relevance, which it doesn't, that call perhaps suggests that Mr. Hembree was confused about what happened in December 2008. R. at 695. That is the date of the claim he mentioned and seems to pertain to a TDIU claim. But the withdrawal at issue took place in September 2008. Mr. Hembree fails to show us how his call is relevant, just as he fails to show ambiguity in "all claims and appeals." R. at 90. In short, we find no error in the Board's conclusion that his withdrawal was valid.

This holds true even with the sparse consideration from the Board. We are required to take due account of the rule of prejudicial error. 38 U.S.C. § 7261(b)(2) (requiring the Court to "take due account of the rule of prejudicial error"); *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) (holding that the harmless-error analysis applies to the Court's review of Board decisions and that the burden is on the appellant to show that he or she suffered prejudice as a result of VA error). Considering harmless error necessarily takes us "beyond the Board's analysis because '[t]he Board cannot predict every instance in which it might be found to have committed error,' and, therefore, 'cannot be expected to make specific factual findings that might facilitate a prejudicial error

8

analysis.'" *Simmons v. Wilkie*, 30 Vet.App. 267, 284 (2018) (quoting *Vogan v. Shinseki*, 24 Vet.App. 159, 163 (2010)), *aff'd*, 964 F.3d 1381 (Fed. Cir. 2020).

Because we detect no ambiguity on the face of the veteran's withdrawal, we find no reason why the Board needed to mechanically check off the elements of § 20.204(b) when Mr. Hembree did not challenge his withdrawal until he got to the Court. The Board had a document that facially complied with the regulation for withdrawing claims and a veteran who did not contend that this withdrawal was invalid. We do "not require the Board to assume the impossible task of inventing and rejecting every conceivable argument in order to produce a valid decision." *Robinson v. Peake*, 21 Vet. App. 545, 553 (2008), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009). Without a reasonable argument that Mr. Hembree's submissions did not seek to withdraw his claim, the Board did not need to confirm the undisputed fact that the veteran's submissions complied with the regulation. Nor would it make sense to remand the matter to the Board for a pro forma analysis. *See Soyini v. Derwinski*, 1 Vet.App. 540, 546 (1991) (explaining that the Court will not remand for better reasons and bases "in the face of overwhelming evidence in support of the result in a particular case . . . [as this] would result in this Court's unnecessarily imposing additional burdens on the [Board and VA] with no benefit flowing to the veteran."

In short, because Mr. Hembree's September 2008 written submissions fully complied with the requirements of § 20.204(b)—they stated his name, file number, and that all claims were withdrawn—the Board correctly found that he withdrew his appeal, and so we affirm the Board decision. We do so without addressing how VA should resolve ambiguity under § 20.204(b) because Mr. Hembree's submissions complied with the regulation and are unambiguous. Nor do we foreclose the possibility that, in an appropriate case, post-withdrawal evidence *could* call the effectiveness of the withdrawal into question; this is not the appropriate case.

## III. CONCLUSION

On consideration of the above and our review of the record, the Board's May 7, 2018, decision is AFFIRMED.