http://www.va.gov/vetapp16/Files3/1621750.txt

Citation Nr: 1621750 
Decision Date: 05/31/16 Archive Date: 06/08/16

DOCKET NO. 12-28 328 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Reno, Nevada

THE ISSUES

1. Entitlement to an increased rating for the residuals of a head injury, headaches, (headaches) currently rated at 30 percent disabling.

2. Entitlement to a total disability rating based upon individual unemployability (TDIU).

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Stuart Sparker, Associate Counsel

INTRODUCTION

The Veteran served on active duty from February 1964 to October 1966.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2012 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Reno, Nevada that denied entitlement to a rating in excess of 10 percent for the Veteran's headaches. Thereafter, the Veteran was assigned a 30 percent rating for headaches, effective from April 9, 2010, forward. 

The Veteran testified at a hearing before the undersigned in May 2013. A transcript is of record. The Board remanded this case in March 2014. It now returns for appellate review. 

The Veteran has submitted notices of disagreement (NODs) with several claims decided in September 2014 and February 2016 rating decisions. The RO has acknowledged his NODs and is taking appropriate action with respect to these claims. Therefore, remand for a Statement of the Case is not required at this time. See Manlincon v. West, 12 Vet. App. 238 (1999).

The issue of entitlement to a TDIU rating is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDING OF FACT

Since the date of his claim, the Veteran's headaches were manifested by very frequent prostrating and prolonged attacks productive of severe economic inadaptability. 

CONCLUSION OF LAW

The criteria for a 50 percent rating for residuals of a head injury, headaches, are satisfied. 38 U.S.C.A. §§ 1155, 5103A (West 2014); 38 C.F.R. §§ 3.102, 3.321, 4.3, 4.124a , Diagnostic Code 8100 (2015). 

REASONS AND BASES FOR FINDING AND CONCLUSION

I. Duties to Notify and Assist

VA's duties to notify and assist under the Veterans Claims Assistance Act of 2000 (VCAA) have been satisfied. See 38 U.S.C.A §§ 5103, 5103A (West 2014); 38 C.F.R. §§ 3.159, 3.326(a) (2015). 

A May 2010 letter notified the Veteran of VA's general criteria for rating service-connected disabilities, provided examples of the types of evidence that could support entitlement to a higher rating, and also provided notice of the Veteran's and VA's respective responsibilities for obtaining relevant records and other evidence. See Vazquez-Flores v. Shinseki, 24 Vet. App. 94, 97-103 (2010); Quartuccio v. Principi, 16 Vet. App. 183, 187 (2002); 38 U.S.C.A. § 5103(a); 38 C.F.R. § 3.159(b). The letter was followed by adequate time for the Veteran to submit information and evidence before initial adjudication or readjudication of this claim. See Mayfield v. Nicholson, 444 F.3d 1328, 1333-34 (Fed. Cir. 2007) (VCAA notice must generally be provided prior to the initial rating decision); but see Mayfield v. Nicholson, 499 F.3d 1317, 1323 (Fed. Cir. 2007) (a timing delay in VCAA notice is harmless if followed by readjudication of the claim after the claimant has had an appropriate time to respond); accord Prickett v. Nicholson, 20 Vet. App. 370 (2006). Accordingly, the duty to notify is satisfied. 

Concerning the duty to assist, the Veteran's service treatment records, VA treatment records, Social Security disability records, and private treatment records identified by him have been associated with the claims file. See 38 C.F.R. § 3.159(c). He has not identified any other records or evidence he wished to submit or have VA obtain. 

Additionally, VA examinations were performed in June 2011, April 2014, and December 2015 that included consideration of the Veteran's medical history and set forth all pertinent findings, such that the Board is able to make a fully informed decision. See Stefl v. Nicholson, 21 Vet. App. 120, 123 (2007); 38 C.F.R. §§ 3.159(c)(4), 3.326(a), 3.327 (2015). There is no evidence indicating that there has been a material change in the severity of the Veteran's headaches since the last examination. See 38 C.F.R. § 3.327(a) (providing that reexaminations will be requested whenever VA needs to determine the current severity of a disability). Thus, further examination is not warranted. See Palczewski v. Nicholson, 21 Vet. App. 174 (2007) (holding that a new VA examination is not required simply because of the passage of time since an otherwise adequate examination was conducted); accord VAOPGCPREC 11-95 (April 7, 1995). Accordingly, the duty to assist is satisfied.

In light of the above, the Veteran has had a meaningful opportunity to participate effectively in the processing of this claim, and no prejudicial error has been committed in discharging VA's duties to notify and assist. See Shinseki v. Sanders, 556 U.S. 396, 407, 410 (2009); Conway v. Principi, 353 F.3d 1369, 1374 (Fed. Cir. 2004); Arneson v. Shinseki, 24 Vet. App. 379, 389 (2011); Vogan v. Shinseki, 24 Vet. App. 159, 163 (2010). 

The Board remanded this claim in March 2014 to obtain additional records and to afford the Veteran a new VA examination. All of these actions have been accomplished. Accordingly, the Board finds there has been substantial compliance with its remand instructions. See Stegall v. West, 11 Vet. App. 268, 271 (1998) (holding that a remand by the Board confers upon the Veteran, as a matter of law, the right to compliance with its remand instructions, and imposes upon VA a concomitant duty to insure compliance with the terms of the remand); see also D'Aries v. Peake, 22 Vet. App. 97, 105 (2008) (holding that only substantial rather than strict compliance with the Board's remand directives is required under Stegall); accord Dyment v. West, 13 Vet. App. 141, 146-47 (1999). 

The Veteran testified at a hearing before the undersigned in May 2013. Under 38 C.F.R. § 3.103(c)(2) (2015), the hearing officer has the responsibility to explain fully the issues and suggest the submission of evidence which the claimant may have overlooked and which would be of advantage to the claimant's position. In Bryant v. Shinseki, 23 Vet. App. 488 (2010), the United States Court of Appeals for Veterans Claims (Court) held that the hearing officer has two duties under § 3.103(c)(2). First, the hearing officer must explain fully the issues still outstanding that are relevant and material to substantiating the claim by explicitly identifying them for the claimant. Id. at 496. Second, the hearing officer must suggest that a claimant submit evidence on an issue material to substantiating the claim when such evidence is missing from the record or when the testimony at the hearing raises an issue for which there is no evidence in the record. Id. at 496-97.

At the hearing, the Veteran had an opportunity to provide testimony in support of the claim, facilitated by questioning from the undersigned and the representative of record. The Veteran did not raise any new issues at the hearing, and there is no indication that any outstanding evidence might exist that would provide additional support for the claim. See id. Moreover, the Board undertook additional development after the hearing was conducted, including arranging for a VA examination and gathering all relevant treatment records. See id. at 498-99 (finding that any deficiencies in discharging the hearing officer's duties under § 3.103(c)(2) were rendered harmless by otherwise developing the record). Given this development, in addition to the Veteran's testimony at the hearing and the evidence in the claims file, the "clarity and completeness of the hearing record [is] intact" and there is no prejudicial error concerning the hearing officer's duties under § 3.103(c)(2). See Bryant, 23 Vet. App. at 498 (holding that the rule of prejudicial error applies to the hearing officer's duties); see also Sanders, 556 U.S. at 407, 410.

II. Analysis

The Veteran contends that a rating greater than 30 percent is warranted for headaches. For the following reasons, the Board finds that entitlement to a higher rating is warranted. 

VA has adopted a Schedule for Rating Disabilities to evaluate service-connected disabilities. 38 U.S.C.A. § 1155; 38 C.F.R. § 3.321; see generally, 38 C.F.R. § Part IV. The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life, including employment. 38 C.F.R. § 4.10 (2015). The percentage ratings in the Schedule for Rating Disabilities represent, as far as practicably can be determined, the average impairment in earning capacity resulting from service-connected diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. § 4.1 (2015). Generally, the degrees of disability specified are considered adequate to compensate for considerable loss of working time from exacerbation or illness proportionate to the severity of the several grades of disability. 38 C.F.R. § 4.1. 

Separate diagnostic codes identify the various disabilities and the criteria for specific ratings. If two disability evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. 38 C.F.R. § 4.7 (2015). Otherwise, the lower rating will be assigned. Id. All reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3; see also 38 C.F.R. § 3.102. The schedule recognizes that disability from distinct injuries or diseases may overlap. See 38 C.F.R. § 4.14 (2015). However, the evaluation of the same disability or its manifestations under various diagnoses, which is known as pyramiding, is to be avoided. Id.

Because the level of disability may have varied over the course of the claim, the rating may be "staged" higher or lower for segments of time during the period under review in accordance with such variations, to the extent the evidence shows distinct time periods where the service-connected disability has exhibited signs or symptoms that would warrant different ratings under the rating criteria. Hart v. Mansfield, 21 Vet. App. 505, 509-10 (2007); Fenderson v. West, 12 Vet. App. 119, 126 (1999). For increased-rating claims, where a claimant seeks a higher evaluation for a previously service-connected disability, it is the present level of disability that is of primary concern, and VA considers the level of disability for the period beginning one year prior to the claim for a higher rating to determine whether and when an ascertainable increase has occurred. See Hart, 21 Vet. App. at 509 (noting that "the relevant temporal focus" is on "the state of the disability from the time period one year before the claim was filed until VA makes a final decision on the claim"); Francisco v. Brown, 7 Vet. App. 55, 58 (1994); Hazan v. Gober, 10 Vet. App. 511, 519 (1992); 38 U.S.C.A. § 5110(b)(2) (West 2014); 38 C.F.R. § 3.400(o)(2) (2015).

The Board has an obligation to provide an adequate statement of reasons or bases supporting its decision. See 38 U.S.C.A. § 7104(d)(1) (West 2014); Gonzales v. West, 218 F.3d 1378, 1380-81 (Fed. Cir. 2000); Allday v. Brown, 7 Vet. App. 517, 527 (1995). The Board must assess the credibility and weight of the evidence, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Caluza v. Brown, 7 Vet. App. 498, 506 (1995). A claimant is entitled to the benefit of the doubt when there is an approximate balance of positive and negative evidence on any issue material to the claim. See 38 U.S.C.A. § 5107; 38 C.F.R. § 3.102 (providing, in pertinent part, that reasonable doubt will be resolved in favor of the claimant). When the evidence supports the claim or is in relative equipoise, the claim will be granted. See Gilbert v. Derwinski, 1 Vet. App. 49, 55 (1990); see also Wise v. Shinseki, 26 Vet. App. 517, 532 (2014). If the preponderance of the evidence weighs against the claim, it must be denied. See id.; Alemany v. Brown, 9 Vet. App. 518, 519 (1996). 

The Veteran's headaches have been assigned a 30 percent rating under DC 8100, which specifically concerns migraines. See 38 C.F.R. § 4.124a. Under DC 8100, a 50 percent rating is assigned for migraines with very frequent completely prostrating and prolonged attacks productive of severe economic inadaptability. Id. A 30 percent rating is assigned for migraines with characteristic prostrating attacks occurring on an average of once a month over the last several months. Id. A 10 percent rating is assigned for migraines with characteristic prostrating attacks averaging one in 2 months over the last several months. Id. A noncompensable (0 percent) rating is assigned for less frequent attacks. Id.

The evidence is at least in equipoise as to whether the Veteran's headaches warrant a 50 percent rating under DC 8100. 

At a June 2011 VA examination, the Veteran described daily chronic and debilitating headaches, which fluctuated in severity. The average pain from the headaches was described as 7 out of 10 in severity. He stated that the aching pain was constant with darting pain across his head. 

The Veteran testified at a Travel Board hearing in May 2013. He reported having severe headaches every day. While noting that some headaches were more severe than others, he stated that some would cause him to stop, sit down, and wait them out. He further reported that the most severe prostrating headaches would occur two-to-three times a week. He also stated that he was prescribed Elavil for his headaches but discontinued usage because he was unable to function on the medication. 

At an April 2014 VA examination, the Veteran described constant, pulsating or throbbing head pain on both sides of his head which worsened during physical activity. He also experienced nausea and sensitivity to light and sound. His headaches typically lasted for more than two days. The examiner noted the Veteran had prostrating headaches that occurred, on average, once a month. He also noted that the Veteran reported his constant headaches impeded his ability to hold any job. 

At a July 2014 PTSD examination, the Veteran reported experiencing headaches every day. At an August 2014 VA examination for a spine condition, the Veteran complained of daily headaches with hypersensitivity to sound and light as well as constant tinnitus. 

At his December 2015 VA examination, the examiner confirmed the 1966 diagnosis of migraines including migraine variants. The Veteran again described constant pulsating or throbbing head pain on both sides of his head that worsened during physical activity. He also reported nausea, vomiting, sensitivity to light and sound, changes in vision and sensory changes that would typically last for one-to-two days. The examiner noted that the Veteran experienced prostrating migraine headaches but noted that their frequency, on average, was with less frequent attacks. 

The VA examinations show that the Veteran experienced prostrating attacks from migraine headaches on average more than once a month throughout the pendency of the claim. However, as the Veteran is competent to report on the frequency of his headaches, the Board finds his May 2013 creditable testimony of experiencing prostrating headaches two-to-three times a week that impede his ability to work highly probative. See Jandreau v. Nicholson, 492 F. 3d 1372 (Fed. Cir. 2007) (holding lay persons without medical training have general competence to testify as to symptoms, but not to provide a medical diagnosis). Accordingly, both the medical and lay evidence shows that the Veteran's headaches more nearly approximate the criteria for a 50 percent rating under DC 8100. See 38 C.F.R. §§ 4.7, 4.124a, DC 8100. 

In sum, the evidence shows that the Veteran's headaches have met or approximated the criteria for a 50 percent rating throughout the pendency of this claim, for the reasons explained above. Thus, staged ratings are not appropriate for the time period under review. See Hart, 21 Vet. App. at 509-10; Fenderson, 12 Vet. App. at 126. A 50 percent rating is the maximum rating available under DC 8100. The Board has considered other diagnostic codes, but finds that they are not applicable to the Veteran's headaches, or do not afford a basis for a higher rating. 

The issue of entitlement to a total disability rating based on individual unemployability (TDIU) has been raised and is discussed in the REMAND portion of this decision. See 38 C.F.R. §§ 3.340, 4.16 (2015); Rice v. Shinseki, 22 Vet. App. 447, 453 (2009) (holding that if the claimant or the record reasonably raises the question of unemployability due to the disability for which an increased rating is sought, then part and parcel of the claim is the issue of entitlement to TDIU based on that disability). 

The evaluation of the Veteran's headaches does not warrant referral for extraschedular consideration. See 38 C.F.R. § 3.321(b); Thun v. Peake, 22 Vet. App. 111, 114 (2008); aff'd, Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). In this regard, because the ratings provided under the VA Schedule for Rating Disabilities are averages, it follows that an assigned rating may not completely account for each individual veteran's circumstances, but nevertheless would still be adequate to address the average impairment in earning capacity caused by the disability. Thun, 22 Vet. App. at 114. However, in exceptional situations where the rating is inadequate, it may be appropriate to refer the case for extraschedular consideration. Id. The governing norm in these exceptional cases is a finding that the disability at issue presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization as to render impractical the application of the regular schedular standards. Id. 38 C.F.R. § 3.321(b)(1). These criteria have been broken up into a three-step inquiry: (1) The schedular criteria must be inadequate to describe the claimant's disability level and symptomatology; (2) There must be related factors such marked interference with employment or frequent periods of hospitalization; (3) If so, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for a determination of whether the claimant's disability picture requires the assignment of an extraschedular rating. Thun, 22 Vet. App. at 114. 

Here, a comparison of the Veteran's headaches with the schedular criteria does not show "such an exceptional or unusual disability picture . . . as to render impractical the application of the regular schedular standards." 38 C.F.R. § 3.321(b). Specifically, his headaches are manifested by frequent prostrating attacks that cause economic inadaptability. These manifestations are contemplated by Diagnostic Code 8100. Thus, there are no manifestations of the Veteran's headache disability not accounted for in evaluating it under the schedular criteria. See Thun, 22 Vet. App. at 115; 38 C.F.R. § 3.321(b). Therefore, the available schedular evaluations are adequate to rate this disability, and the first step of the inquiry is not satisfied. See id. In the absence of this threshold finding, the second step of the inquiry, namely whether there are "related factors" such as marked interference with employment or frequent periods of hospitalization, is moot. See Thun at 118-19. Therefore, the Board will not refer the evaluation of the Veteran's headaches for extraschedular consideration. See id.; 38 C.F.R. § 3.321(b). 

The Board notes that in Johnson v. McDonald, 762 F.3d 1362, 1365 (Fed. Cir. 2014), the United States Court of Appeals for the Federal Circuit (Federal Circuit) held that the combined effects of a Veteran's service-connected disabilities must also be considered in determining whether the case should be referred for extraschedular consideration. As only the evaluation of the Veteran's headaches are on appeal before the Board, and as all symptoms and functional impairment associated with it have been considered, referral for extraschedular consideration based on the combined effects of other service-connected disabilities is not warranted, as they are not within the scope of this appeal.

Accordingly, the balance of the evidence supports assignment of a 50 percent rating for the Veteran's headaches. See 38 U.S.C.A. § 5107(b); 38 C.F.R. §§ 3.102; 4.3; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

ORDER

Entitlement to a rating of 50 percent for residuals of a head injury, headaches, is granted, subject to the law governing payment of monetary benefits.

REMAND

Unfortunately, a remand is also required in this case. Although the Board sincerely regrets the additional delay, it is necessary to ensure that there is a complete record upon which to decide the Veteran's claim so that he is afforded every possible consideration. 

The issue of TDIU has been reasonably raised by the record. A claim for TDIU is considered part and parcel of an increased rating claim. See Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). At his May 2013 hearing, the Veteran stated that he did not work as a result of his service-connected disabilities, including his headaches. Then at a July 2014 PTSD VA examination, the Veteran reported that he tried to work but he had headaches and backaches, and that those conditions made it difficult for him to hold a job. At an August 2014 VA examination, the examiner noted that the Veteran's constant headaches impede his ability to hold any job. Finally, the Veteran's December 2015 VA examiner noted that his headaches impacted the Veteran's ability to work, including affecting his ability to concentrate at any given task. 

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran a VCAA letter concerning the issue of entitlement to a total disability rating based on individual unemployability. He should also be provided with and asked to complete and return a VA Form 21-8940.

2. Obtain the Veteran's updated VA treatment records.

3. Next, schedule the Veteran for an appropriate VA examination, to be conducted, if possible, by a vocational rehabilitation specialist, to evaluate the issue of entitlement to a TDIU. All indicated tests and studies are to be performed, and a comprehensive social, educational and occupational history obtained. In conjunction with the examination, the claims folder must be made available to and reviewed by the examiner. 

Following evaluation of the Veteran, the examiner should identify all limitations imposed on the Veteran as a consequence of his service-connected disabilities (i.e., acquired psychiatric disorder to include PTSD with a depressive disorder; residuals of a traumatic brain injury; headaches; right upper extremity radiculopathy; intervertebral disc syndrome of the cervical spine; and tinnitus) and opine as to the impact of the service-connected disabilities, to include in the aggregate, on his ability to secure and follow a substantially gainful occupation.

If it is the examiner's opinion that the Veteran's service-connected disabilities do not render him unemployable, the examiner must suggest the type or types of employment in which the Veteran would be capable of engaging with his service-connected disabilities, given his skill set and educational background.

All examination findings, along with the complete rationale for all opinions expressed, must be set forth in the examination report.

4. Finally, readjudicate the claim on appeal. If the benefit sought on appeal remains denied, the Veteran and his representative should be provided a supplemental statement of the case (SSOC). A reasonable period of time should be allowed for response before the appeal is returned to the Board. 

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).

______________________________________________
P. M. DILORENZO 
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs