http://www.va.gov/vetapp16/Files3/1626438.txt

Citation Nr: 1626438 
Decision Date: 06/30/16 Archive Date: 07/11/16

DOCKET NO. 11-08 922A ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in St. Petersburg, Florida

THE ISSUES

1. Entitlement to a rating in excess of 10 percent for status postoperative right wrist styloidectomy and capsulodesis.
 
2. Entitlement to a compensable rating for status postoperative ganglion cyst removal with right hand involvement.

REPRESENTATION

Veteran represented by: Florida Department of Veterans Affairs

WITNESS AT HEARING ON APPEAL

The Veteran

ATTORNEY FOR THE BOARD

Arif Syed, Counsel

INTRODUCTION

The Veteran served on active duty from July 2000 to December 2009.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a February 2010 decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Winston-Salem, North Carolina. Original jurisdiction in this case is currently with the RO in St. Petersburg, Florida.

The Veteran testified before the undersigned Veterans Law Judge (VLJ) at a hearing in September 2015. A transcript of the hearing has been associated with the record.

At the September 2015 hearing, the Veteran and her representative made clear that it has been the Veteran's intent from the time she filed her Notice of Disagreement in April 2010 to the present day to appeal the ratings assigned to both of her right hand and wrist disabilities (i.e. both the residuals of her ganglion cyst removal, as well as residuals of her wrist styloidectomy and capsulodesis), even though she only specified disagreement with the noncompensable rating for residuals of her ganglion cyst removal on her actual April 2010 statement to VA. Her descriptions of symptomatology involving decreased strength, and increased numbness and limitation of motion of the right hand and fingers have been consistent throughout the appeal period. The Board has no reason to call into question the Veteran's testimony and accordingly has listed the issue of whether a rating in excess of 10 percent for status postoperative right wrist styloidectomy and capsulodesis as an issue properly on appeal.

This appeal was processed using the Virtual VA and Veterans Benefits Management System (VBMS) paperless claims processing systems. 
In November 2015, the Board remanded the Veteran's claims. The Veteran's VA claims folder has been returned to the Board for further appellate proceedings.

FINDINGS OF FACT

1. During the period on appeal, the Veteran's status postoperative right wrist styloidectomy and capsulodesis is not shown to be productive of nonunion in the upper or lower half of the radius with false movement. 

2. The Veteran's status postoperative ganglion cyst removal with right hand involvement is manifested by right hand pain, but no ankylosis, muscle injury, or limitation of motion of the individual right fingers.

CONCLUSIONS OF LAW

1. The criteria for a rating in excess of 10 percent for status postoperative right wrist styloidectomy and capsulodesis have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5212 (2015).

2. The criteria for a compensable rating for status postoperative ganglion cyst removal with right hand involvement have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Code 5229 (2015).

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran seeks entitlement to entitlement to increased disability ratings for her status postoperative right wrist styloidectomy and capsulodesis and status postoperative ganglion cyst removal with right hand involvement. In the interest of clarity, the Board will discuss certain preliminary matters. The issues on appeal will then be analyzed and a decision rendered.

Stegall concerns

The Board previously remanded these claims in order for the agency of original jurisdiction (AOJ) to obtain outstanding VA treatment records and obtain VA examinations to determine the severity of the Veteran's right wrist and right ganglion cyst removal disabilities. Pursuant to the Board's remand instructions, the AOJ obtained outstanding VA treatment records and associated these records with the claims folder. Also, the Veteran was provided VA examinations for her right wrist and right ganglion cyst removal disabilities. The Veteran's claims were most recently readjudicated via a February 2016 supplemental statement of the case (SSOC). Accordingly, the Board's remand instructions have been complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998) [where the remand orders of the Board are not complied with, the Board errs as a matter of law when it fails to ensure compliance]. 

Duties to Notify and Assist

VA has a duty to notify the claimant and the claimant's representative, if any, of any information, and any medical or lay evidence, not previously provided to the Secretary that is necessary to substantiate the claim. This notice must specifically inform the claimant of which portion, if any, of the evidence is to be provided by the claimant and which part, if any, VA will attempt to obtain on behalf of the claimant. See 38 U.S.C.A. § 5103(a) (West 2014); 38 C.F.R. § 3.159(b) (2015). 

The Board notes that the claims for initial increased disability ratings for a right wrist disability and removal of right ganglion cyst are downstream issues from the February 2010 rating decision that initially established service connection for these disabilities and assigned the initial ratings and its effective dates. The United States Court of Appeals for Veterans Claims (Court) held in Dingess/Hartman v. Nicholson, 19 Vet. App. 473, 490-91 (2006), that in cases where service connection has been granted and an initial disability rating and effective date have been assigned, the typical service connection claim has been more than substantiated, it has been proven, thereby rendering section 5103(a) notice no longer required because the purpose that the notice is intended to serve has been fulfilled. See also Dunlap v. Nicholson, 21 Vet. App. 112 (2007); Goodwin v. Peake, 22 Vet. App. 128 (2008). Thus, to the extent that there is any noncompliance with the statutorily prescribed VCAA notice requirements with respect to the claims for initial increased disability ratings for a right wrist disability and right ganglion cyst removal, such noncompliance is deemed to be non-prejudicial to these specific claims.

VA also has a duty to assist a claimant in the development of her claims. See 38 U.S.C.A. § 5103A (West 2014); 38 C.F.R. § 3.159(c) (2015). Here, reasonable efforts have been made to assist the Veteran in obtaining evidence necessary to substantiate her claims. The pertinent evidence of record includes the Veteran's statements, service treatment records, and post-service VA treatment records. 

As noted above, the Veteran also was afforded a hearing before the undersigned VLJ during which she presented oral argument in support of her increased rating claims. Here, during the September 2015 Board hearing, the VLJ clarified the issues on appeal (increased rating claims for status postoperative right wrist styloidectomy and capsulodesis and status postoperative ganglion cyst removal with right hand involvement); clarified the concept of increased rating claims; identified potential evidentiary defects which included the severity of the Veteran's disabilities; clarified the type of evidence that would support the Veteran's claims; and enquired as to the existence of potential outstanding records. Thus, the actions of the VLJ supplement the VCAA and comply with any related duties owed during a hearing set forth in 38 C.F.R. § 3.103.

Additionally, the Veteran was afforded VA examinations in September 2009, February 2010, and January 2016. The VA examination reports reflect that the examiners interviewed and examined the Veteran, reviewed her past medical history, documented her current medical conditions, and rendered appropriate diagnoses consistent with the remainder of the evidence of record. Furthermore, these examination reports contain sufficient information to rate the Veteran's disabilities on appeal under the appropriate diagnostic criteria. The Board concludes that the VA examination reports are adequate for evaluation purposes. See 38 C.F.R. § 4.2 (2015); see also Barr v. Nicholson, 21 Vet. App. 303, 312 (2007) [holding that when VA undertakes to provide a VA examination or obtain a VA opinion, it must ensure that the examination or opinion is adequate]. 

The Board finds that under the circumstances of this case, VA has satisfied the notification and assistance provisions of the law, and that no further action need be undertaken on the Veteran's behalf.

Accordingly, the Board will proceed to a decision.

Higher evaluation for status postoperative right wrist styloidectomy and capsulodesis

Disability evaluations are determined by the application of a schedule of ratings, which is based on average impairment of earning capacity. 38 U.S.C.A. § 1155 (West 2014); 38 C.F.R. Part 4 (2015). Separate rating codes identify the various disabilities. 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. Any reasonable doubt regarding the degree of disability is resolved in favor of the veteran. 38 C.F.R. § 4.3. 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). In addition, an appeal from the initial assignment of a disability rating requires consideration of the entire time period involved, and contemplates "staged ratings" where warranted. See Fenderson v. West, 12 Vet. App. 119 (1999). However, "staged ratings" are appropriate for an increased rating claim when the factual findings show distinct time periods where the service-connected disability exhibits symptoms that would warrant different ratings. Hart v. Mansfield, 21 Vet. App. 505 (2007). 

38 C.F.R. §§ 4.40, 4.45 and 4.59 require the Board to consider a veteran's pain, swelling, weakness, and excess fatigability when determining the appropriate evaluation for a disability using the limitation of motion diagnostic codes. See Johnson v. Brown, 9 Vet. App. 7, 10 (1996); DeLuca v. Brown, 8 Vet. App. 202 (1995).

With respect to the Veteran's status postoperative right wrist styloidectomy and capsulodesis, she is rated as 10 percent disabling under 38 C.F.R. § 4.71a, Diagnostic Codes 5024-5212 (tenosynovitis; impairment of radius). 

The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, diagnosis, and demonstrated symptomatology. Any change in diagnostic code by a VA adjudicator must be specifically explained. See Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992).

The Board has considered the applicability of other Diagnostic Codes. In this regard, the Board notes that the evidence of record does not document ankylosis of the right elbow; limitation of flexion of the right forearm to 90 degrees; limitation of extension of the right forearm to 75 degrees; flexion of the right forearm limited to 100 degrees and extension of the right forearm limited to 45 degrees; impairment of the right flail joint of the elbow; nonunion of the right radius and ulna with flail false joint; impairment of supination and pronation; or ankylosis of the right wrist. Therefore the Board finds that Diagnostic Codes 5205 (ankylosis of elbow), 5206 (limitation of flexion of forearm), 5207 (limitation of extension of forearm), 5208 (forearm flexion limited to 100 degrees and extension to 45 degrees), 5209 (elbow, other impairment of flail joint), 5210 (nonunion of radius and ulna with flail false joint), 5213 (impairment of supination and pronation, and 5214 (ankylosis of wrist) are not for application. 

With regard to the current assigned Diagnostic Codes pertaining to the Veteran's status postoperative right wrist styloidectomy and capsulodesis, the Board notes that under VA regulations, separate disabilities arising from a single disease entity are to be rated separately. See 38 C.F.R. § 4.25 (2015); see also Esteban v. Brown, 6 Vet. App. 259, 261 (1994). However, the evaluation of the same disability under various diagnoses is to be avoided. See 38 C.F.R. § 4.14 (2015); see also Fanning v. Brown, 4 Vet. App. 225 (1993).

Under Diagnostic Code 5024, arthritis of a major joint is to be rated under the criteria for limitation of motion of the affected joint. See 38 C.F.R. § 4.71a, Diagnostic Codes 5003, 5024 (2015). Pertinently, in this case, the medical evidence of record does not demonstrate that the Veteran has arthritis of her right wrist. See, e.g., the January 2016 VA examination report. 

Diagnostic Code 5212 provides for ratings based on impairment of the radius. In the major side, malunion of the radius with bad alignment is rated 10 percent; nonunion of the radius in the upper and lower half with false movement is rated 20 percent; nonunion in the lower half with false movement without loss of bone substance or deformity is rated 30 percent; and nonunion in the lower half with false movement with loss of bone substance (1 inch (2.5 cm) or more) and marked deformity is rated 40 percent. 38 C.F.R. § 4.71a.

The Board notes that the evidence record documents the Veteran as right hand dominant, thus making her right side the major side. See, e.g., the September 2015 Board hearing transcript, page 18.

The Veteran was provided a VA examination in September 2009. She gave a history of having been found to have a cyst on the right wrist in 2003, and this was operated on while she was stationed in Hawaii in November 2004. Since then, the condition continued to be troublesome, and she needed a ligament repair in July 2009. After the operation, her forearm was placed in a cast. Because her forearm was placed in a cast, examination of the wrist could not be performed. 

The Veteran was provided another VA examination in February 2010. She reported undergoing right wrist styloidectomy with capsulodesis in service and that she continued to have pain, stiffness, and difficulty holding objects with her right hand. The Veteran did not report flare-ups. The Veteran reported that the right wrist disability had no effect on traveling, feeding, dressing, toileting, grooming, and driving and mild effect on chores, shopping, exercise, sports, and recreation. 

Upon physical examination, with regard to the right wrist symptoms, the examiner noted pain, stiffness, weakness, crepitus, and decreased speed of joint motion. She did not report deformity, giving way, instability, incoordination, episodes of dislocation or subluxation, locking episodes, effusions, flare-ups, or symptoms of inflammation. The examiner noted that the right radial styloid was removed, although there was no evidence of abnormal weight bearing. Range of motion testing revealed dorsiflexion to 40 degrees, palmar flexion to 50 degrees, radial deviation to 10 degrees, and ulnar deviation to 25 degrees with objective evidence of pain. Repetitive motion testing revealed dorsiflexion to 25 degrees, palmar flexion to 45 degrees, radial deviation to 10 degrees, and ulnar deviation to 20 degrees. There was no joint ankylosis. An X-ray of the wrist revealed a normal impression. The examiner diagnosed the Veteran with status post right wrist styloidectomy with capsulodesis. 

The Veteran was provided another VA examination in January 2016. She continued to report pain at the ventral proximal carpal level in a mild fashion that became worse and sharp if she increased her physical activities with the right hand. The sharp pain manifested at the level of the dorsum of the right wrist radiating to the dorsal carpal area. She also reported restricted motion of her right wrist, tightness, and occasional numbness and tingling around the right carpal area. She reported flare-ups when weight bearing for about 15 pounds, shaking hands, opening jars, writing on a keyboard, making a fist, and moving her car's steering wheel all the way. She did not wear a brace for the wrist and did not report functional loss.

Upon physical examination, the VA examiner reported normal range of motion, in particular palmar flexion to 80 degrees, dorsiflexion to 70 degrees, ulnar deviation to 45 degrees, and radial deviation to 20 degrees. Although the examiner noted objective pain on motion, the Veteran was able to perform repetitive testing with no loss of motion and the pain did not result in functional loss. As to whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over a period of time or with flare-ups, the examiner could not provide an opinion without resort to speculation as to provide an objective assessment, the Veteran would have to be present and examined when such an issue occurred. Muscle strength testing revealed flexion and extension rate strength of 4/5. There was no muscle atrophy or ankylosis. The examiner specifically noted no other pertinent physical findings, complications, conditions, signs or symptoms related to any conditions associated with the right wrist disability. The examiner also noted an X-ray report dated May 2013 which revealed a normal impression. Pertinently, regarding the severity in the Veteran's residuals from her ganglion cyst surgery and her right wrist styloidectomy and capsulodesis, the examiner opined that the Veteran's recurrent symptomatology over the years after the ganglion cyst surgery in November 2003 was related to the right wrist distal radio-ulnar dysfunction that motivated the arthroscopic styloidectomy and capsulodesis in the summer of 2009. However, the Veteran's right wrist symptomatology after the last or second surgery recurred in a somewhat progressive fashion, which was related to the residuals from the 2009 styloidectomy and capsulodesis. 

The Board notes a VA treatment record dated September 2015 documenting the Veteran's report of right forearm pain which caused difficulty painting. The Board further notes the Veteran's statements of record and testimony at the September 2015 Board hearing wherein she reported increased pain, numbness and limitation of motion, and decreased grip strength.

Based on the evidence of record, the Board finds that the evidence does not support a rating in excess of 10 percent for the Veteran's status postoperative right wrist styloidectomy and capsulodesis under Diagnostic Code 5212 for impairment of the radius during the period on appeal. Under Diagnostic Code 5212, in order to obtain a higher 20 percent rating, the evidence must show nonunion in the upper and lower half of the radius with false movement. Indeed, higher ratings under this diagnostic codes requires nonunion of the radius. See 38 C.F.R. § 4.71a, Diagnostic Code 5212. In this case, there is no competent and probative evidence that the Veteran suffered from an ununited fracture of the right radius at any point during the appeal period. See February 2010 and January 2016 VA examination reports. Crucially, X-ray reports dated during the period under consideration have revealed normal findings. Thus, a higher rating is not warranted under Diagnostic Code 5212.

The current 10 percent evaluation also contemplates pain on motion and the Veteran's complaints of functional loss. DeLuca, supra. In this regard, as indicated above, the February 2010 and January 2016 VA examinations documented normal range of right wrist motion. Although the examinations noted objective evidence of pain, there was no additional limitation of motion upon repetitive testing. Pertinently, the January 2016 VA examiner reported that the pain did not result in functional loss. In light of the foregoing, the Board finds that even with consideration of the DeLuca factors and the Veteran's statements regarding her right wrist disability, a disability rating in excess of 10 percent is not warranted. Additionally, the Board finds that the 10 percent rating adequately compensates the Veteran for her pain on motion and reported functional loss associated with the disability. 

Accordingly, the Board finds that a disability rating in excess of 10 percent for status postoperative right wrist styloidectomy and capsulodesis is not warranted during any period under consideration.

Under VA regulations, separate disabilities arising from a single disease entity are to be rated separately. See 38 C.F.R. § 4.25 (2015); see also Esteban v. Brown, 6 Vet. App. 259, 261 (1994). However, the evaluation of the same disability under various diagnoses is to be avoided. See 38 C.F.R. § 4.14 (2015); see also Fanning v. Brown, 4 Vet. App. 225 (1993).

The Board notes that the Veteran has complained of numbness and tingling in her right wrist. See, e.g., the January 2016 VA examination report. However, the medical evidence of record does not indicate neurological impairment sufficient to warrant a separate disability rating. Specifically, the January 2016 VA examiner documented EMG testing of the Veteran in June 2011 which revealed a normal nerve conduction study. Further, in providing an orthopedic examination of the Veteran's right wrist, he indicated no other pertinent physical findings, complications, conditions, signs or symptoms related to any conditions associated with the status postoperative right wrist styloidectomy and capsulodesis. Also, neurological examination conducted during the September 2009 VA examination revealed normal findings. There are no other nerve conductions studies of record which document neuropathy of the right upper extremity associated with the status postoperative right wrist styloidectomy and capsulodesis. Indeed, the Board notes that the Veteran has not been assessed with such a neurological disability. Based on this record, the Board finds that a separate rating for neurological impairment is not warranted. 

The Board also notes that the medical evidence documents a scar associated with the status postoperative right wrist styloidectomy and capsulodesis. See, e.g., the January 2016 VA examination report. 
 
The applicable rating criteria for skin disorders under 38 C.F.R. § 4.118 were amended, effective August 30, 2002 [see 67 Fed. Reg. 49490-99 (July 31, 2002)] and again in October 2008. In this case, the Veteran's claim on appeal dates back to August 2009. Therefore, the post-October 2008 version of the schedular criteria is applicable.

Under 38 C.F.R. § 4.118, Diagnostic Code 7801, a 10 percent rating is warranted for a scar not of the head, face, or neck that is deep, nonlinear, and has an area or areas of at least 6 square inches but less than 12 square inches. Under Diagnostic Code 7802, a 10 percent rating is warranted for a scar not of the head, face, or neck that is superficial and nonlinear and has an area or areas of 144 square inches or greater. Under Diagnostic Code 7804, a 10 percent rating is warranted for a scar that is unstable or painful. Diagnostic Code 7805 instructs to evaluate any disabling effects not considered in Diagnostic Codes 7800-04 under an appropriate diagnostic code. 

Crucially, the competent and probative evidence of record indicates that the Veteran's scar is asymptomatic. Indeed, the competent and probative evidence indicates that the Veteran's scar is well-healed and painless and does not have an area exceeding 6 square inches. See, e.g., the January 2016 VA examination report. There is no competent and probative evidence to the contrary. Accordingly, the Board finds that a separate rating is not warranted for the Veteran's scar. 

Higher evaluation for status postoperative ganglion cyst removal with right hand involvement

There is no Diagnostic Code addressing ganglion cysts. The Veteran's status postoperative ganglion cyst removal with right hand involvement is currently evaluated as noncompensable under 38 C.F.R. § 4.71a, Diagnostic Code 5229 (limitation of motion of index or long finger). A ganglion is the anatomic nomenclature for a group of nerve cell bodies located outside the central nervous system." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, p. 768 (1994). It also refers to a benign cystic tumor occurring on an aponeurosis or a tendon in the wrist or dorsum of the foot; it consists of a thin fibrous capsule enclosing a clear mucinous fluid. Id. The aponeurosis is a white, flattened or ribbonlike tendinous expansion, usually serving to connect a muscle with the parts that it moves. Id. at 118. 

When there is no diagnostic code directly on point for a given disorder, the disorder is evaluated under a closely related disease or injury in which not only the functions affected, but the anatomical localization and symptomatology are closely analogous. See 38 C.F.R. § 4.20; Vogan v. Shinseki, 24 Vet. App. 159, 161 (2010). The assignment of a particular diagnostic code is "completely dependent on the facts of a particular case." Butts v. Brown, 5 Vet. App. 532, 538 (1993). One diagnostic code may be more appropriate than another based on such factors as an individual's relevant medical history, the diagnosis, and the demonstrated symptomatology. See id. Conjectural analogies will be avoided, as will the use of analogous ratings for conditions of doubtful diagnosis, or for those not fully supported by clinical and laboratory findings, nor will ratings assigned to organic disease and injuries be assigned by analogy to conditions of functional origin. See 38 C.F.R. § 4.20. Any change in a diagnostic code by a VA adjudicator must be specifically explained. Pernorio v. Derwinski, 2 Vet. App. 625, 629 (1992). 

In this case, the Veteran's status postoperative ganglion cyst removal with right hand involvement is manifested by right hand pain. Diagnostic Code 5229 provides for a maximum 10 percent rating for major or minor limitation with a gap of one inch (2.5 cm.) or more between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, or, with extension limited by more than 30 degrees. The Board also notes that Diagnostic Code 5228 (limitation of motion of the thumb) provides for a 10 percent rating for a gap of one to two inches (2.5 to 5.1 cm.) between the thumb pad and the fingers, with the thumb attempting to oppose the fingers as well as a maximum 20 percent rating for a gap of more than two inches (5.1 centimeters) between the thumb pad and the fingers, with the thumb attempting to oppose the fingers. 

The Veteran was provided a VA examination in September 2009. She gave a history of having been found to have a cyst on the right wrist in 2003, and this was operated on while she was stationed in Hawaii in November 2004. Since then, the condition continued to be troublesome, and she needed a ligament repair in July 2009. After the operation, her forearm was placed in a cast. Because her forearm was placed in a cast, examination of the wrist could not be performed. 

The Veteran was afforded a VA examination in February 2010. She reported improved symptoms with regard to her right ganglion cyst removal. However, she continued to have pain, stiffness, and difficulty holding objects with her right hand. The examiner noted an overall decrease in right hand strength and dexterity as well as pain and stiffness in all fingers including the thumb. 

Upon physical examination, the VA examiner recorded normal range of motion testing of the right fingers as well as no gap between the index finger and proximal transverse crease of the hand on maximal flexion of the finger. Although there was objective evidence of pain on motion of the right finger, there was no additional limitation of motion. There was no objective evidence of pain on motion with regard to the other fingers including the thumb. Further, there was no ankylosis or deformity of any finger. An X-ray of the right hand revealed a normal impression. The examiner diagnosed the Veteran with status post removal of right ganglion cyst. 

The Veteran was provided another VA examination in January 2016. She reported pain in the right wrist constantly at the ventral proximal carpal level in a mild fashion that became worse and sharp if she increased her physical activities with the right hand. The sharp pain was usually manifested at the level of the dorsum of the right wrist radiating to the dorsal carpal area. She reported flare-ups that occurred when weight bearing for about 15 pounds, shaking hands, opening jars, writing on keyboard, making a fist, and moving her car's steering wheel. She did not report having any functional loss or functional impairment. 

Upon examination, the VA examiner noted that range of motion testing of the fingers including the thumb revealed normal findings. Further, there was not a gap between the pad of the thumb and the fingers or a gap between the finger and proximal transverse crease of the hand on maximal finger flexion. Although there was pain noted on examination, it did not result in functional loss. Also, the Veteran was able to perform repetitive testing with no additional loss of motion. As to whether pain, weakness, fatigability or incoordination significantly limited functional ability with repeated use over a period of time or with flare-ups, the examiner could not provide an opinion without resort to speculation as to provide an objective assessment, the Veteran would have to be present and examined when such an issue occurred. Hand grip testing was 5/5. There were no findings of ankylosis. The examiner specifically noted no other pertinent physical findings, complications, conditions, signs or symptoms related to any conditions associated with the status post ganglion cyst removal disability. Pertinently, as discussed above, regarding the severity in the Veteran's residuals from her ganglion cyst surgery and her right wrist styloidectomy and capsulodesis, the examiner opined that the Veteran's recurrent symptomatology over the years after the ganglion cyst surgery in November 2003 was related to the right wrist distal radio-ulnar dysfunction that motivated the arthroscopic styloidectomy and capsulodesis in the summer of 2009. However, the Veteran's right wrist symptomatology after the last or second surgery recurred in a somewhat progressive fashion, which was related to the residuals from the 2009 styloidectomy and capsulodesis. 

The Board notes a VA treatment record dated September 2015 documenting the Veteran's report of right hand pain which caused difficulty painting. The Board further notes the Veteran's statements of record and testimony at the September 2015 Board hearing wherein she reported difficulty grip objects as well as decreased mobility and flexibility and difficulty writing. 

Based on this record, the Board finds that a compensable rating for the Veteran's status postoperative ganglion cyst removal with right hand involvement is not warranted. At the above examinations, the Veteran's fingers were found to have normal range of motion. Further, the January 2016 VA examiner specifically noted that there was not a gap between the pad of the thumb and the fingers or a gap between the finger and proximal transverse crease of the hand on maximal finger flexion . There are no competent and probative findings to the contrary. As discussed above, Diagnostic Code 5229 provides for a maximum 10 percent rating for major or minor limitation with a gap of one inch (2.5 cm.) or more between the fingertip and the proximal transverse crease of the palm, with the finger flexed to the extent possible, or, with extension limited by more than 30 degrees. Also, Diagnostic Code 5228 (limitation of motion of the thumb) provides for a 10 percent rating for a gap of one to two inches (2.5 to 5.1 cm.) between the thumb pad and the fingers, with the thumb attempting to oppose the fingers. As neither of these criteria have been met during any period under consideration, the Board finds that a compensable disability rating is not warranted.

The Board must also consider whether a higher disability evaluation is warranted due to functional loss due to pain or due to weakness, fatigability, incoordination, or pain on movement of a joint under 38 C.F.R. §§ 4.40, 4.45. See DeLuca v. Brown, 8 Vet. App. 202 (1995). Although the Veteran had pain on objective motion at the February 2010 and January 2016 VA examinations, the VA examiners noted that there was no additional limitation of motion upon repetitive testing. Pertinently, the January 2016 VA examiner reported that the pain did not result in functional loss. In light of the foregoing, the Board finds that even with consideration of the DeLuca factors and the Veteran's statements regarding her residuals of ganglion cyst removal disability, a compensable disability rating is not warranted. Thus, the Board finds that any pain associated with the Veteran's disability is encompassed in the zero percent rating currently assigned to her status postoperative ganglion cyst removal with right hand involvement. See 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca. 

The Board also notes that the medical evidence documents a scar associated with the status postoperative ganglion cyst removal with right hand involvement. See, e.g., the January 2016 VA examination report. 
 
The applicable rating criteria for skin disorders under 38 C.F.R. § 4.118 were amended, effective August 30, 2002 [see 67 Fed. Reg. 49490-99 (July 31, 2002)] and again in October 2008. In this case, the Veteran's claim on appeal dates back to August 2009. Therefore, the post-October 2008 version of the schedular criteria is applicable.

Under 38 C.F.R. § 4.118, Diagnostic Code 7801, a 10 percent rating is warranted for a scar not of the head, face, or neck that is deep, nonlinear, and has an area or areas of at least 6 square inches but less than 12 square inches. Under Diagnostic Code 7802, a 10 percent rating is warranted for a scar not of the head, face, or neck that is superficial and nonlinear and has an area or areas of 144 square inches or greater. Under Diagnostic Code 7804, a 10 percent rating is warranted for a scar that is unstable or painful. Diagnostic Code 7805 instructs to evaluate any disabling effects not considered in Diagnostic Codes 7800-04 under an appropriate diagnostic code. 

Crucially, the competent and probative evidence of record indicates that the Veteran's scar is asymptomatic. Indeed, the competent and probative evidence indicates that the Veteran's scar is well-healed and painless and does not have an area exceeding 6 square inches. See, e.g., the January 2016 VA examination report. There is no competent and probative evidence to the contrary. Accordingly, the Board finds that a separate rating is not warranted for the Veteran's scar. 

Extraschedular consideration

The Board also has considered whether the Veteran is entitled to a greater level of compensation on an extraschedular basis. Ordinarily, the VA Schedule will apply unless there are exceptional or unusual factors which would render application of the schedule impractical. See Fisher v. Principi, 4 Vet. App. 57, 60 (1993).

According to the regulation, an extraschedular disability rating is warranted based upon a finding that the case presents such an exceptional or unusual disability picture with such related factors as marked interference with employment or frequent periods of hospitalization that would render impractical the application of the regular schedular standards. See 38 C.F.R. § 3.321(b)(1) (2015). An exceptional case is said to include such factors as marked interference with employment or frequent periods of hospitalization as to render impracticable the application of the regular schedular standards. See Fanning v. Brown, 4 Vet. App. 225, 229 (1993).

Under Thun v. Peake, 22 Vet App 111 (2008), there is a three-step inquiry for determining whether a veteran is entitled to an extraschedular rating. First, the Board must determine whether the evidence presents such an exceptional disability picture that the available schedular evaluations for that service-connected disability are inadequate. Second, if the schedular evaluation does not contemplate the Veteran's level of disability and symptomatology and is found inadequate, the Board must determine whether the Veteran's disability picture exhibits other related factors such as those provided by the regulation as "governing norms." Third, if the rating schedule is inadequate to evaluate a veteran's disability picture and that picture has attendant thereto related factors such as marked interference with employment or frequent periods of hospitalization, then the case must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service to determine whether, to accord justice, the Veteran's disability picture requires the assignment of an extraschedular rating.

With respect to the first prong of Thun, the evidence in this case does not show such an exceptional disability picture that the available schedular evaluations for the service-connected status postoperative right wrist styloidectomy and capsulodesis and status postoperative ganglion cyst removal with right hand involvement are inadequate. A comparison between the level of severity and symptomatology of the Veteran's disabilities with the established criteria shows that the rating criteria reasonably describe the Veteran's disability levels and symptomatology. 
 
In that regard, during the appellate time period the Veteran's status postoperative right wrist styloidectomy and capsulodesis symptoms are primarily pain and stiffness, and her status postoperative ganglion cyst removal with right hand involvement symptoms are primarily hand pain. The foregoing symptoms are the types of symptoms contemplated in the current assigned ratings for the postoperative right wrist styloidectomy and capsulodesis under Diagnostic Code-5212 and for the status postoperative ganglion cyst removal with right hand involvement under Diagnostic Code 5229. Thus, the Veteran's schedular ratings under these Diagnostic Codes are adequate to fully compensate her for these disabilities.

The Board also notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (Fed. Cir. 2014). The Veteran has at no point during the current appeal indicated that her status postoperative right wrist styloidectomy and capsulodesis and status postoperative ganglion cyst removal with right hand involvement combined with her other service-connected disabilities (bilateral pes planus, tinnitus, hallux valgus of the feet, hemorrhoids, and left wrist cyst) results in further disability. Accordingly, this is not an exceptional circumstance in which extraschedular consideration may be required to compensate the Veteran for a disability that can be attributed only to the combined effect of multiple conditions. Therefore, referral for consideration of an extraschedular evaluation is not warranted. 

The Board further notes that the Veteran has not contended, nor does the evidence otherwise show, that her status postoperative right wrist styloidectomy and capsulodesis and status postoperative ganglion cyst removal with right hand involvement have caused loss of use of body part such that referral of a claim for special monthly compensation is warranted. Indeed, the competent and probative evidence shows that she continues to function, albeit in a limited capacity, with consideration of these disabilities.

In denying the Veteran's claims for increased ratings, the Board observes that in Rice v. Shinseki, 22 Vet. App. 447 (2009), the Court of Appeals for Veterans Claims (Court) held that a claim for a total rating based on unemployability due to service-connected disability (TDIU), either expressly raised by the Veteran or reasonably raised by the record involves an attempt to obtain an appropriate rating for a disability and is part of the claim for an increased rating. The Board notes that the Veteran has reported her disabilities on appeal have an effect on her employment in that she has moderate physical limitations with prolonged writing, pulling, pushing, weight bearing, squeezing, and grabbing. However, she has not contended, nor does the remainder of evidence otherwise show, that her status postoperative right wrist styloidectomy and capsulodesis and status postoperative ganglion cyst removal with right hand involvement preclude her from obtaining substantial gainful employment. Accordingly, the Board concludes that consideration of the issue of TDIU for adjudication based on the Court's holding in Rice is not for application.

ORDER

Entitlement to a rating in excess of 10 percent for status postoperative right wrist styloidectomy and capsulodesis is denied.
 
Entitlement to a compensable rating for status postoperative ganglion cyst removal with right hand involvement is denied.

____________________________________________
H.N. SCHWARTZ
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs